W. F. BUCKLEY ET AL. V. J. J. TERRELL, COMMISSIONER OF THE GENERAL LAND OFFICE.

No. 1817. Decided April 15, 1908.

**1.—School Land—Sale for Cash—Deposit in Treasury.**

The cancellation of an award of school land to a purchaser upon a sale for cash, on the ground that the purchase price was not in the Treasury to the credit of such purchase when the award was made, was improper where the purchaser had directed the necessary amount to be transferred to his payment on such purchase out of payments previously made by him on applications for other lands, which had been rejected, but such transfer had

not been made because the Land Commissioner had not, as required by a rule of his office, notified the Treasurer at once of the rejection of such applications so as to subject the money paid thereon to the order of the purchaser. (Pp. 488, 489.)

**2.—Same—Case Distinguished.**

Rawls v. Terrell, Commissioner, ante p. 157, distinguished as a case where the rights of another purchaser had intervened before the deposit by the first applicant of the necessary amount in the Treasury. (P. 489.)

Original application to the Supreme Court by W. F. Buckley and B. G. O'Neal, for mandamus against the Commissioner of the General Land Office.

*Charles Rogan,* for relator.

*Robert Vance Davidson,* Attorney-General, and *W. E. Hawkins,* Assistant, for respondent.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a petition for the writ of mandamus to compel the respondent, as Commissioner of the General Land Office, to set aside the cancellation of an award made to relators as purchasers of a tract of 80 acres of school land.

The allegations of the petition state the following facts: On the 1st day of December, 1907, the relators made application to purchase twelve parcels of school land—1-40 of the purchase money of which aggregated the sum of $403.44. Relators having been informed that several of the tracts for which application had been made, had been placed on the market by reason of forfeiture for the non-payment of interest and had been redeemed and the sales reinstated as valid, applied at the General Land Office and was informed that such was the fact and that it would only require the sum of $173.80 to pay 1-40 of the purchase money upon the tracts they had applied to purchase and which had not been redeemed. They accordingly in December, 1907, paid into the State treasury $173.80 as cash payments on the lands that had not been redeemed. By December 17, 1907, all their bids had been rejected, except one, on which the cash payment amounted only to $5.75. On the 13th of December, 1907, they were informed of these facts at the land office. On the same day they filed an application to purchase the 80 acre tract in controversy for the sum of $240, all cash, and, in order to provide for the payment thereof, deposited in the treasury the sum of $107 and instructed the treasurer to make up the balance of $133 from the money that was to come to them from the deposit on their applications that had been and were to be rejected. On the 23d day of December, 1907, the 80 acre tract was awarded to them; but on the 12th day of February, 1908, the award was cancelled—for the reason that there was not sufficient money in the treasury to pay the amount of the bid.

According to the allegations of the petition all the bids save the one above mentioned had been rejected on December 17, 1907. A rule of the General Land Office provided that "as soon as an

application is rejected the State treasurer will be advised so he can return the payment." If this rule had been complied with on the 17th of December, the money would have been subject to the order of relators and presumably would have been applied upon the application for the 80 acre tract as the treasurer had been instructed to do by relators. So that when the application was passed upon and awarded by respondent, the money would have been in the treasury subject to the bid—the only trouble being, that the Commissioner had failed to give notice to the treasurer. The statute provides, that "at the same time the applicant applies to purchase the land, he shall also deposit in the State treasury one-fortieth of the aggregate price of the same as the first payment thereon." (Laws 1905, p. 162.) This evidently does not apply to cash sales—such as in this case a sale of 80 acres which is required to be for cash. (Laws 1907, p. 495.) But the Act of 1907 provides that "no application shall be considered if the cash payment is not in the State treasury as now provided by law." Now it seems to us that since until some adverse right intervenes, the applicant has the right to file a new application, or to refile the old, and to pay the purchase money required to be paid, no good reason is seen why his application remaining on file should not become a good application, when the purchase money is deposited. But should we be mistaken about this (a proposition in which we are not all agreed) the respondent having awarded the purchase when the money was or should have been in the treasury applicable to the offer, at least if he had sent notice of the rejection of the previous applications to the treasury, we think it was error to cancel the application at a subsequent date.

The language of the Act of 1907 in relation to this matter which is the only provision applicable thereto, that "no application shall be considered if the cash payment is not in the State treasury as now provided by law," leaves room for the construction, that whenever the money is deposited, an application being on file, it may be considered, provided some adverse application has not been filed for the purchase of the land.

Rawles' case, ante, p. 157 (19 Texas Ct. Rep., 983) was a case of competitive bidding and Rawles had put in the highest bid, but had not paid the purchase money: the corespondent, Bogel, had the next highest bid, and had made his cash deposit as required by law. Therefore, when the bids were opened, Rawles not having his money on deposit, had no application in that could be considered and Bogel having the next highest bid, was entitled to the land. His right had intervened before Rawles had perfected his application by a deposit of the cash payment and therefore it was held that his title should prevail. That case is clearly distinguishable from this. Here there is no intervening right and no adverse claimant, as in that case.

We think the award should not have been cancelled and therefore the writ of mandamus is awarded.