FRANK H. DAVIS, Respondent, v. A. J. McCOLL et al., Appellants.

Kansas City Court of Appeals, April 6, 1914.

1. **BILLS AND NOTES: Uncertain as to Amount or Time of Payment: Promissory Notes: Negotiability.** Under the provisions of the Negotiable Instruments Act, Secs. 9972 and 9973, R. S. 1909, a note is not made non-negotiable by reason of the fact that it contains a provision for attorneys' fees and for an extension of time of payment without notice, but, in the absence of such statute, either of such provisions would destroy its negotiability.

2. ———: **Non-negotiable Instrument: Endorser's Liability.** The mere writing of his name on the back of a non-negotiable instrument does not make one liable as an endorser. There must be proof of the agreement under which the endorsement was made and that it was for a sufficient consideration. Consequently, the mere introduction in evidence of a non-negotiable note will not make out a case against an endorser, even if proof is made of his signature.

3. ———: **Locus of Contract.** A note made in a foreign State and payable there is a contract of that State, and the liability of parties thereon is to be determined by the law of that State.

4. **EVIDENCE: Statute of Foreign State: Judicial Notice.** Judicial notice cannot be taken of the statutes of a foreign State when they are issuable facts in a controversy. Formal proof must be made of them as of any other fact, and it is immaterial that the court may be possessed of independent knowledge of such foreign laws.

5. ———: ———: ———: **Application of Law of forum.** In suits on a foreign contract it is only where there is neither proof nor ground for presumption as to what the law of such foreign state is, that the court is justified in applying the laws of the forum.

6. ———: **Law of Foreign State: Common Law: Presumption.** Whenever it appears or is shown that a law is in force in a foreign state the presumption is that it continues in force until the contrary is shown. Consequently, if the foreign state is one in which the common law was established, prior to its admission into the Union, by statutes or governmental acts within the judicial notice of the court, and no proof is made as to the foreign law, the court is required to presume that the common law having been once in force there, has continued and is still in force.

7. ———: ———: ———: ———: **States not Subject to the Common Law: Lex Loci Contracts.** It is only in respect of those States which were never subject to the common law, prior to their admission into the Union, that, in the absence of proof as to the *lex loci contractus*, the court will apply the statute laws of the forum.

8. ———: ———: ———: ———: ———. Although Iowa was originally a part of the Louisiana Purchase and was, therefore, under the French Law, yet, as the common law was, prior to her admission as a state, put into force there by the Territorial Laws of Missouri and by Acts of Congress, of

which the court must take judicial notice, therefore, the common law must be presumed to be in force there, upon the question involved, until the contrary is shown.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*Hughes & Whitsett* for appellants.

*Lathrop, Morrow, Fox & Moore* for respondents.

TRIMBLE, J.—In this case plaintiff brought five suits in a justice court of Jackson county, Missouri, upon five notes by merely filing with the justice the said notes without further statement of his cause of action. Summonses were issued and served upon the defendant in each of the suits and on the return day judgment was rendered for plaintiff. Defendant appealed to the circuit court where the five suits were by agreement consolidated into one.

A jury was waived and the cause submitted to the court. Plaintiff offered in evidence the five notes and rested. Defendant demurred. The court overruled the demurrer and rendered judgment for plaintiff on the notes. Defendant appealed.

All of the notes are dated at Des Moines, Iowa, December 29, 1906, and are identical, except they respectively fell due on the first days of August and October, 1907, and April, May, and July, 1908. The following sets forth the other terms of all of the notes:

"$200.00.          Des Moines, Ia., Dec. 29, 1906.

On or before the 1 day of May, 1908, for value received I promise to pay to the order of A. J. McColl the sum of two hundred dollars, payable at Des Moines, Iowa, with interest at 8 per cent per annum from date. Interest payable semiannually.

Upon default of payment of this note the makers, endorsers, guarantors and sureties agree to pay all attorneys' fees and expenses of collection, and consent that any Justice of the Peace may have jurisdiction of this note to the amount of $300 and—do hereby severally waive demand of payment, protest and notice of protest of this note, and consent that time of payment may be extended without notice. A failure to pay interest when due shall cause this note to become due.

A. W. DUDLEY."

On the back of each appeared the following: "A. J. McColl. Without recourse on me. J. S. Turrill." The name of A. J. McColl on the back of the notes was admitted to be his signature.

It will be observed that the notes provide for the payment of attorneys' fees and expenses of collection, and that the time of payment may be extended without notice. Under the statutory provisions of the Negotiable Instrument Law, this would not destroy their negotiability. [Sections 9972, 9973, R. S. Mo. 1909.] However, without these statutory provisions, the notes are not negotiable. [McCoy v. Green, 83 Mo. 626, l. c. 633; First National Bank v. Gay, 63 Mo. 33; Samstag v. Conley, 64 Mo. 476; Creasy v. Gray, 88 Mo. App. 454; Culbertson v. Nelson, 93 Iowa, 187; Woodbury v. Roberts, 59 Iowa, 348; Chouteau v. Allen, 70 Mo. 290; Coffin v. Spencer 39 Fed. 262.]

And it will be further noticed that the notes were all made in Iowa, are payable in Iowa, and are, therefore, Iowa contracts. [39 Cyc. 898; The South Missouri Land Co. v. Rhodes, 54 Mo. App. 129; Central National Bank v. Cooper, 85 Mo. App. 383; Case Threshing Machine Co. v. Tomlin, 161 S. W. 286, l. c. 289 and cases cited.]

If the note is nonnegotiable the mere writing of his name by defendant McColl on the back thereof will not make him liable as an endorser. There must be proof of the actual agreement under which the endorse-

Davis v. McColl.

ment was made and that it was for a sufficient consideration. [Shaffstall v. McDaniel, 152 Pa. St. 598; 4 Am. & Eng. Ency. of Law (2 Ed.) pp 479-80; Story v. Lamb, 52 Mich. 525; Frevall v. Fitch, 5 Wharton (Pa.) 325.] There is a vast difference between the liability of an endorser on a negotiable and a nonnegotiable instrument. [Norton on Bills and Notes (3 Ed.) 9; 1 Daniel on Negotiable Instruments (6 Ed.) Sec. 666.] Consequently, the mere introduction in evidence of a nonnegotiable note, with proof of the signature of the payee on the back, will not make out a case against one as an endorser. There must be proof of the contract made at the time of the indorsement. This is said without passing on the question whether any one but the immediate indorsee could sue the endorser of a nonnegotiable instrument.

There was no proof that Iowa has passed and has in force the statute known as the Negotiable Instruments Act, and the liability of defendant must be determined by the law of that state if the same can be ascertained or presumed. We cannot take judicial knowledge of the existence of such statute in Iowa. In Rashall v. Railroad, 249 Mo. 1. c. 516, it is said: "Our courts do not take judicial cognizance of the laws of sister states or foreign countries when they are issuable facts in any controversy. In such cases formal proof must be made just as of any other fact, and it is immaterial that the court may be possessed of independent knowledge of the foreign laws."

But plaintiff contends that as there is no proof of what the law in Iowa is, we are authorized to apply the law existent and in force in our own state. This may be true where there is neither proof nor ground for presumption as to what the law in the other State is. In such case, since the court has no proof of the law in force in the other State and has nothing upon which to base a presumption as to what that law is, it will not say it is helpless and without law, but will apply the law of

its own forum, whether that be the common law or a
statute. But whenever the other State in question is
one concerning which we are required to take judicial
knowledge of the fact that the common law was in force
prior to its admission to the Union, then, in the ab-
sence of proof to the contrary, we must present that
the common law has continued in force and is still in ex-
istence there. If, however, the other state is one of
which we can take judicial knowledge that the common
law was never in force prior to its admission, we can in
the absence of proof as to its law, apply our own stat-
utes and system of law. As said in Hazelett v. Wood-
ruff, 150 Mo. l. c. 540, "it is only in respect of those
States which were never subject to the common law
that, in the absence of proof as to the *lex loci con-
tractus*, the court will apply the statute laws of the
forum."

Consequently, the question arises to which class of
States does Iowa belong? Is she a State in which the
common law never prevailed before her admission into
the Union, or is she one in which the common law was
put in force, prior to her admission, by any statute or
ordinance *of which we are to take judicial notice?* Here
it might be readily taken for granted that, inasmuch as
Iowa was a part of the Louisiana Purchase and was
therefore under civil or French law, she was never
under the common law prior to her admission. But the
fact that she was under the French law while a
part of the Louisiana Purchase is not material if the
common law was, prior to her admission, put in force
there *by any statute of which we are required to have
judicial knowledge.* If it was, then we must take judi-
cial notice that the common law was, by the passage of
such ordinance or statute, put in force there at that
time, and, having been once in force, that law is pre-
sumed to have remained in force until the contrary is
shown. The case of Flato v. Mulhall, 72 Mo. 522, is not

contrary to but supports this rule. The court in that case held that judicial notice could not be taken of the laws of Texas; that as no proof of the Texas laws was offered, and as there was no basis for a presumption that the common law was ever in force there, the court could not presume that it was. At page 525, the court say: "If the common law ever prevailed there, or now prevails there, it must be *by virtue of some statutory provision of which we cannot take judicial notice.* As no evidence was introduced, *and no presumption can be indulged* as to the *lex loci contractus,* the law of the forum must govern." (Italics ours.)

So that if, as stated before, the common law was put in force in Iowa, prior to her admission, by any ordinance or statute of which we must take judicial notice, then that law is presumed to have remained in force until now, in the absence of any proof to the contrary.

An examination of the various laws and ordinances of Congress dealing with Iowa prior to her admission into the Union, and of the Territorial laws of Missouri when Iowa was a part of the Territory of Missouri will disclose that the common law was clearly established there by laws of which we are bound to take judicial knowledge.

These various Acts of Congress, which are all of a public nature, and the Territorial Laws of Missouri, are all within our judicial notice without proof. [1 Greenleaf on Evid. Sec. 490; 17 Am. & Eng. Ency. of Law (2 Ed.) 928; Mobile, etc. Ry. v. Bromberg, 37 So. Rep. l. c. 401; Missouri K. &. T. Ry. v. Wise, 109 S. W. 112; Overton v. McCabe, 109 S. W. 861; Perry v. Movis, 104 S. W. 571; Greene v. Boaz, 47 S. W. 255.]

After possession was taken of the Louisiana Purchase under the treaty with Napoleon and the Act of Congress of October 31, 1803, Congress, by an Act approved March 26, 1804, divided the Purchase into two territories and all north of the 33rd degree of north

latitude was called the District of Louisiana. This was changed to the Territory of Louisiana by Act of Congress approved March 3, 1805. The Act of Congress of June 4, 1812, changed the name thereof to the Territory of Missouri and made a number of provisions for its government. The territory of Missouri included what is now known as Iowa and the 14th Section of said Act of Congress of June 4, 1812, provided that: "The people of the said territory shall always be entitled to proportionate representation in the General Assembly; to judicial proceedings according to the common law and the laws and usages in force in the said territory." While the territory comprising what is now Iowa was still a part of the Missouri Territory, the Territorial Legislature of Missouri passed an Act January 20, 1816, Section 1 of which provided: "The common law of England, which is of a general nature, and all of the statutes of the British Parliament, in aid of, or to supply the defects of said common law, made prior to the fourth year of James First, and of a general nature, and not local to that kingdom, which said law and statutes are not contrary to the laws of this territory, and not repugnant to or inconsistent with the Constitution and laws of the United States, shall be the rule of decision of this territory until altered or repealed by the legislature." [Laws Mo. Territory, Dec. Sess. 1815, p. 32, Sec. 1.]

After Missouri became a State that part of the Territory of Missouri comprising what is now Iowa was by Act of Congress made a part of the Territory of Wisconsin. The Act of Congress of April 20, 1836, by which the Territory of Wisconsin was created, put in force the same system of laws in force under the Ordinance of 1787, approved July 13, 1787, governing the Northwest Territory, out of which Wisconsin was one of the five states carved. Article 2 of this Ordinance of 1787 provided that "The inhabitants of said Terri-

tory shall always be entitled to . . . judicial proceedings according to the course of the common law.''

The Supreme Court of Illinois, in Penny v. Little, 3 Scammon (Ill.) 301, held that this provision meant the common law as it was then understood and expounded by the courts in America. And the fourth year of the reign of King James I was the year fixed for the transplanting of the common law into America because that was the period at which the first territorial government was established in America and with it the common law of England as it then existed. In Clark v. Clark, 18 Ind. 156, 1. c. 158 it is said: ''We know judicially that the common law was brought from England to this country by our ancestors and was declared for the government of the Territory of the Northwest . . . to be a part of the fundamental law of that territory.'' [See also Coburn v. Harvey, 18 Wis. 156; Stout v. Keyes, 2 Doug. (Mich.) 184; Forman v. Benson, 8 Mich. 18, 1. c. 21; Crane v. Reeder, 21 Mich. 24, 1. c. 61.]

Now on June 12, 1828, Congress by an Act of that date organized the Territory of Iowa, and Section 12 of said Act provided: ''That the existing laws of the Territory of Wisconsin shall be extended over said territory subject to be altered, etc., by proper authority.''

The Supreme Court of Iowa, in the case of O'Fallon v. Simplot, 4 Iowa, 381, 1. c. 399, held that ''the Ordinance of 1787 for the government of the Northwest Territory, made it (the common law) the law of that country; and that was extended over Wisconsin, and then the laws of Wisconsin over Iowa.''

So that, we see that not only was the common law established over what is now Iowa by the Territorial Statute of Missouri of January 20, 1816, but that the common law was established over the Northwest Territory by the Ordinance of 1787; that, when Wisconsin was carved out of this Northwest Territory into the Territory of Wisconsin, the same law was put in force

there as was in force under the Ordinance of 1787; and that when what is now Iowa was put into the Territory of Wisconsin she not only carried the common law she had under the Territorial Legislative Act of Missouri, but she became subject to the common law already in force in Wisconsin; and when the Territory of Iowa was carved out of Wisconsin the same law existing in Wisconsin Territory was by Act of Congress extended over the Territory of Iowa. And all of this was done by Acts which we are bound to judicially notice. Hence the common law was established in Iowa long prior to its admission into the Union, and having been once established we must presume that it has continued in force to the present time, in the absence of any proof of the contrary. It follows, therefore, that, as the liability of the defendant must be determined according to the law of the place of the contract, and as the notes in suit are, in the absence of any statute, not negotiable, the proof offered in support of plaintiff's case was not sufficient and the demurrer should have been sustained. The judgment is, therefore, reversed and the cause remanded. All concur.