## CITY NAT. BANK v. KELLY *et al.*

No. 5374.   Opinion Filed September 28, 1915.

(151 Pac. 1172.)

1. **BILLS AND NOTES—Negotiability—Provision for Waiver.** A promissory note, otherwise negotiable, is not rendered nonnegotiable by containing a provision waiving presentment for payment, notice of nonpayment, and protest, and consenting that time for payment may be extended without notice.

2. **SAME—Provision for Attorney's Fee.** The provision for the payment of an attorney fee, in a note given since the enactment of the negotiable instrument law, does not render such note nonnegotiable.

3. **BILLS AND NOTES—"Purchaser for Value"—Notes Taken as Security.** One who takes a negotiable, promissory note as collateral security is a purchaser for value, and unaffected by any equities between the original parties to the note, of which he had no notice.

4. **BILLS AND NOTES—Negotiable Instruments—Rights of Transferror.** A purchaser for value, without notice and before maturity, of a negotiable paper may transfer it before maturity to one who has notice, and the purchaser will acquire all the rights of his transferror. So, where a bank took a negotiable note in good faith and for value, before maturity, as collateral for money loaned to the payee of the note, it became the absolute owner of the paper by surrendering to the payee his note for which it was held as collateral. **Held,** that they lost none of the rights as innocent holders which they acquired when they took the note as collateral.

5. **DAMAGES—Liquidated Damages—"Penalty."** Where a contract provides for a number of distinct things to be done by one of the parties, and further provides a sum certain to be taken as liquidated damages, if there is only a partial breach, the sum agreed upon as liquidated damages must be held a "penalty," and the plaintiff can only recover his actual damages.

(Syllabus by Devereux, C.)

*Error from District Court, Greer County;*

*G. A. Brown, Judge.*

Action by the City National Bank against S. E. Kelly and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

This was an action on a promissory note in the following form:

"1,000.00.          HOLLIS, OKLAHOMA, Nov. 23, 1910.

"Dec. 1st. 1911. without grace, after date. for value received, we as principals promise to pay to the order of W. B. Denton one thousand and no-100 dollars at the Groves National Bank.   Both principal and interest payable in lawful money of the United States, with interest at 10 per cent. per annum from date until paid, interest to become as principal when due and bear the same rate of interest. The makers and indorsers of this note hereby severally waive presentment for payment, notice of nonpayment, protest and notice of protest and consent that time may be extended without notice thereof.   Appraisement and all exemptions waived.   If placed in the hands of an attorney, or suit be instituted, we agree that judgment be rendered for 10 per cent. additional as attorney's fees, and we herewith give full authority to said W. B. Denton or his assigns, to sell any collateral security assigned or attached at public or private sale, without notice, upon nonpayment of this note.                              S. E. KELLY,
                                   "W. E. KELLY."

Which is indorsed as follows:   "W. B. DENTON."

The petition was in the usual form, and the defendants answered, admitting the execution of the note, and setting up as a defense that W. E. Kelly signed the note only as surety for his son, and received no part of the consideration; that the consideration for the note was the purchase by S. E. Kelly of a one-half interest in the real estate and loan business of Denton Bros., and in the good will of the company, together with the stock in trade, fixtures, and furniture pertaining thereto, and also a one-half interest

in a Ford automobile, then owned by Denton Bros., and the further consideration of said note was that W. B. Denton, the payee, agreed to work for the defendant Kelly and his firm, from the 26th day of November, 1910, until March 1, 1911; and as a further consideration that W. B. Denton agreed not to engage in the real estate business in the town of Hollis, except as agent of the said Kelly, or his firm, for a period of 20 years. A copy of the contract is attached to the answer. The answer further alleges that the Groves National Bank, predecessor of the plaintiff in error, knew of the contract, and knew of the negotiations that were being had, and of the trade that was finally made, and was familiar with its terms, and therefore the plaintiff in error (who is the successor of the Groves National Bank) took the promissory note with full knowledge of what the consideration was, and with full knowledge of the contract, and therefore it was not an innocent purchaser for value before maturity. The answer further sets up that the consideration of the note has wholly failed, because Denton did not own a one-half interest in the furniture and fixtures pertaining to the business of Denton Bros., and that Kelly got no title to the same; that the consideration for said note further failed because Denton, in violation of the terms of the contract, engaged in the real estate business in Hollis, to the injury of Kelly. The answer further alleges that by the stipulations contained in the contract, the sum of $1,500 was agreed upon as liquidated damages and not as penalty, and alleged that by reason of the breach of the contract by Denton they have been damaged in the sum of $1,500. The contract is as follows:

"That the said W. B. Denton, for the consideration hereinafter specified, agrees to sell to the said party of the second part and the said party of the second part agrees

to buy of the said party of the first part all his interest in the real estate business now known as the firm of Denton Bros. (and owned by H. J. Denton and W. B. Denton), to wit: An undivided one-half interest in the real estate and farm loan business and also the good will of the said business, heretofore carried on in the name of Denton Bros.; together with all the stock in trade, fixtures, and effects pertaining thereto, and also one-half interest in the Ford automobile now owned by the said Denton Bros.; and the said party of the second part is to take charge of said business this day and to share in all the future business and all unfinished business. The said party of the first part agrees to work for said party of the second part or his firm from this date until the first day of March, 1910 [1911]. The said party of the second part agrees to pay to the said party of the first part (for and in consideration of the business and goods heretofore mentioned) the sum of $1,500.00 cash. The said party of the first part agrees not to engage in the real estate business in the town of Hollis, Oklahoma (except as an agent of the said party of the second part or his firm) for a period of twenty years. And it is expressly understood that the stipulations aforesaid are to apply to and bind the heirs, executors and administrators of the parties hereto; and in case of failure, the parties bind themselves each unto the other in the sum of $1,500.00 as liquidated damages and not as a penalty, to be paid by the failing party."

There was evidence tending to show that on December 6, 1910, the Groves National Bank, which afterwards sold all of its assets, including this note, to the plaintiff in error, acquired the note in controversy as collateral security for the note of Denton for the same amount, and on June 15, 1911, Denton traded the note in controversy to the bank in payment of his note for $1,000, for which the Kelly note was held as collateral. There was also evidence tending to show that Denton's title to a part of the furniture embraced in the contract failed, the value of such articles

amounting to from $50 to $75, but that Kelly went into the business of Denton Bros., and remained there until the following August, when he sold out his interest. And there was evidence on the part of the defendants tending to show that Denton did not work for Kelly as required by the contract, until March, 1911, and that he did engage in the real estate business at Hollis. This evidence, however, is contradicted by the evidence of the bank. As above set out, Kelly sold his interest in the business in August, 1911, and after he sold, Denton admitted that he engaged in the real estate business by consent of Kelly's vendee. There was also evidence that the bank knew of the contract between Kelly and Denton, but there is no evidence that it knew of any breach thereof prior to the time it took the note as collateral security to the Denton note in December. The court charged the jury, in part, as follows:

"(2)  If you find from a preponderance of the evidence that after the execution of the note sued on and after the execution of the contract, Exhibit A to defendants' answer, W. B. Denton indorsed and delivered said note to the Groves National Bank as collateral to secure his individual note to said bank, and that while the bank so held said note as collateral, and before the purchase thereof from W. B. Denton, W. B. Groves, the president of that bank, in a conversation with said S. E. Kelly relative to said note, was informed and given notice by him, of the execution and existence of said contract, Exhibit A to defendants' answer, and was further informed that said note would not be paid by defendants, then you are instructed that the purchase of the note by the bank after such notice and information to the president thereof would be in effect notice to the bank of the information given to its president, W. B. Groves, and that thereafter the Groves National Bank, and its successor, the City National Bank, held said note subject to any legal offset or defense which the defendants,

Kelly, could set up against W. B. Denton were he the plaintiff in this action and suing to recover on said note; and if you further find from a preponderance of the evidence that after the execution and delivery of the note sued on and the contract, Exhibit A to defendants' answer, said contract was breached by W. B. Denton by a failure on his part to work for S. E. Kelly, or the firm of Denton & Kelly, and was breached by said W. B. Kelly by thereafter entering into the real estate business in the town of Hollis, contrary to the terms and provisions of said contract, and if you find that said breach by W. B. Denton, if any, was prior to the date of the sale by S. E. Kelly, of his business and interest in the firm business of Denton & Kelly to one Hendrix, and was while the defendant, S. E. Kelly, was the owner of a one-half interest in the real estate business purchased from W. B. Denton, and while he was the holder of said contract, Exhibit A, then it will be your duty to find for the defendants, and so say by your verdict, since the damages stipulated in said contract Exhibit A in favor of the defendant Kelly in the event of such breach would exceed and entirely offset the defendants' obligation on the note sued on; but if you do not so find as stated in this paragraph of these instructions, then you must return a verdict for the plaintiff as stated in paragraph one of these instructions."

Exceptions to this instruction were duly saved, and it is assigned as error in this court. The jury found for the defendants, and the plaintiff below brings the case to this court by petition in error and case-made.

*E. M. Stewart, Counts & Counts,* and *Gray & McVay,* for plaintiff in error.

*B. L. Tisinger,* for defendants in error.

Opinion by DEVEREUX, C. (after stating the facts as above). It is settled in this jurisdiction that one who takes a negotiable instrument as collateral security is a purchaser for value, and unaffected by any equities between

the original parties to the note. *Farmers' National Bank of Tecumseh v. McCall*, 25 Okla. 600, 106 Pac. 866, 26 L. R. A. (N. S.) 217. It is also settled that the provision in a note, waiving presentment for payment, notice of non-payment, and protest and consenting that time for payment may be extended without notice, does not render the note nonnegotiable (*Missouri Lincoln Trust Co. v. Long*, 31 Okla. 1, 120 Pac. 291), and this note having been given after the passage of the negotiable instrument law, the provision for an attorney's fee does not render it nonnegotiable (Rev. Laws 1910, sec. 4052, subd. 5). We therefore hold the note in question was a negotiable instrument. The question, however, still remains whether the bank lost its rights as an innocent holder when it obtained absolute title to the note in suit in June, 1911, the date that it took it in payment of the Denton note for an equal amount for which the note in suit was held as collateral. In other words, does the holder of negotiable paper for value, and without notice, lose his rights if, after notice, he takes the collateral in place of the original debt. In 1 Daniel on Neg. Inst. (6th Ed.) sec. 803, it is said:

"We have seen under what circumstances the purchaser of a negotiable instrument has a better right and title than his transferror. It is to be observed further that as a general rule the purchaser can never be placed on a worse footing than his transferror, although he himself could not, in the first instance, have acquired the vantage ground occupied by such transferror. And therefore, even, if he have notice that there was fraud in the inception of the paper, or that it was lost or stolen, or that the consideration has failed between some anterior parties, or that the paper be overdue and dishonored, he is nevertheless entitled to recover, provided his immediate indorser was a *bona fide* holder for value unaffected by any of these defenses. As soon as the paper comes into the hands of a

holder, unaffected by any defects, its character as a negotiable security is established, and the power of transferring it to others, with the same immunity which attaches in his own hands, is incident to his legal right, and necessary to sustain the character and value of the instrument as property and to protect the *bona fide* holder in its enjoyment. To prohibit him from selling as good a right and title as he himself has would destroy the very object for wh'ch they are secured to him—would indeed be paradoxical. And it has been justly said that this doctrine 'is indispensable to the security and circulation of negotiable instruments, and is founded on the most comprehensive and liberal principles of public policy.' Nor is it a hardship to the maker or acceptor of the instrument. For, as said by Beck, C. J., 'The maker of the note would be liable to the transferror; his condition is made no harder by the note coming into the hands of one having notice of its infirmities.' "

The only exception we have been able to find to this rule is: (1) When the transferror himself has no title to the note, then in some cases—not necessary to be specified in the case at bar—a *bona fide* purchaser obtains no title (1 Dan. on Neg. Inst., sec. 802a; *Gourley v. Pioneer Loan Co., ante,* p. 434, 151 Pac. 1072; and (2) when the note is invalid between the payor and payee, the payee himself cannot, by purchase from a *bona fide* holder, become successor to his rights (1 Dan. Neg. Inst., sec. 805) ; but none of these reasons, in our opinion, apply to the conditions existing in this case. The bank had the right, in case the Denton note was not paid, to sell this collateral, and had it purchased it, it certainly would not have lost any of its rights as an innocent purchaser, and we can see no reason why its rights should have been changed by acquiring title to the note, which it then held as an innocent purchaser for value, in the manner above set out. As was said by the Supreme Court of Iowa:

"The maker of the note will be liable to the transferror; his condition is made no harder by the note coming into the hands of one having notice of its infirmities." *(Simons v. Merritt, 33* Iowa, 537.)

But, in addition to this, the court charged the jury that the damages stipulated in the contract in favor of the defendant, Kelly, in the event of a breach, exceeded and entirely offset the defendants' obligation on the note sued on. From this instruction it is obvious that the court treated the stipulation for $1,500 damages as liquidated damages, and not as penalty. The contract, which is set out above, provides several things for Denton to do, and the agreed damages of $1,500 is provided in case of failure to perform the contract, which means the entire contract, and not any one of the independent conditions contained in it. In the case at bar Denton had transferred his interest in the business, and Kelly received it, and afterwards sold it, but the title to some of the chattels named had failed, and, taking the evidence most favorably for the plaintiff, Denton had broken the contract by entering into the real estate business in Hollis, contrary to its terms. Our statute on this subject provides (Rev. Laws 1910, sec. 974) :

"Penalties imposed by contract for any nonperformance thereof are void. But this section does not render void such bonds or obligations, penal in form, as have heretofore been commonly used; it merely  *  *  *  avoids the penal clauses."

Section 975 provides:

"Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by the next section."

Section 976 provides:

The parties to a contract may agree therein upon "an amount which shall be presumed to be the amount of damage sustained by a breach" thereof, "when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

In *Raymond v. Edelbrock*, 15 N. D. 231, 107 N. W. 194, it is held, where the contract stipulates for the performance of several acts, and fixes the same amount of damages for the nonperformance of any single condition as is fixed for a total breach, regardless of the relative detriment apt to result from such partial breach as compared to the loss for the total breach, the very terms of the contract itself demonstrate that compensation for actual detriment was not the thought of the parties. If the agreement is not for compensation it is necessarily one for penalty.

In 1 Pom. Eq. Jur. (3d Ed), sec. 444, it is said:

"When an agreement provides for the performance or nonperformance of one single act, or of several separate and distinct acts, if the stipulation to pay a certain sum of money upon a default is so framed, is of such a nature and effect that it necessarily renders the defaulting party liable in the same amount at all events, both when his failure to perform is complete and when it is only partial, the sum must be regarded as a penalty, and not as liquidated damages."

In our opinion these authorities announce the true rule and are applicable to the facts in the case at bar. There were in the contract under consideration a number of separate and independent things to be done by Denton: First. He was to transfer one-half interest in the real estate business, and the evidence shows that he did this. Second. He was to transfer a one-half interest in an automobile, and the evidence shows that this was done. Third. He was to

transfer a one-half interest in all the personal property set out in the contract, and. this was done, with the exception of some articles of the value of from $50 to $75. And, fourth. He was not to engage .in the real estate business in Hollis for 20 years, and was to work for Kelly, or his firm for a certain time. The contract provides as liquidated damages the sum of $1,500 for non-performance of the contract. Under the construction which seems to have been placed on_ the contract by the trial court, had all of it been performed, except transferring the personal property, Kelly would still have been entitled to recover the $1,500. Under the above authorities, and under sound reason, we do not think this is so. We are therefore of the opinion that the instruction complained of was faulty in both aspects above discussed.

We therefore recommend that the judgment be reversed, and the cause remanded.

By the Court: It is so ordered.