[L. A. No. 8517. In Bank.—April 6, 1927.]

THE ANAHEIM NATIONAL BANK (a Corporation), Respondent, v. BLANCHE L. DOLPH, Appellant.

[1] PROMISSORY NOTES — NEGOTIABILITY — SECTIONS 3082, 3083, CIVIL CODE — COST OF COLLECTION — ATTORNEY'S FEES. — Under section 3082, subdivision 2, of the Civil Code, adopted as a part of the Uniform Negotiable Instruments Law in 1917, an instrument in order to be negotiable must contain an unconditional promise or order to pay a sum certain in money, but under section 3083, subdivision 5, of the Civil Code, the sum payable is a sum certain within the meaning of the act, although it is to be paid with cost of collection or an attorney's fee, in case payment shall not be made at maturity.

[2] ID.—CHARGES FOR COLLECTION.—The provision in a promissory note that if interest or principal is not paid when due, then accrued interest and prinicipal are to draw interest at the rate of ten per cent per annum until paid, together with all attorney's fees and other costs and "charges for the collection thereof," means no more than to pay attorney's fees and costs of collection in case of nonpayment as permitted by the statutes, and the insertion of the word "charges" could add nothing to the agreement so permitted and when inserted did not destroy the negotiability of the note.

[3] ID.—TIME OF PAYMENT—STIPULATION FOR EXTENSION—NEGOTIABILITY.—It is well settled that a stipulation in a promissory note that sureties, indorsers, and guarantors consent that time

---

1.  See 19 Cal. Jur. 810; 3 R. C. L. 897.

3.  Effect of provision for extension of time of payment on negotiability of note, 125 Am. St. Rep. 201; Ann. Cas. 1912D, 7; 17 Ann. Cas. 55; 15 L. R. A. (N. S.) 878.

of payment may be extended without notice thereof does not destroy negotiability.

[4] ID.—AGREEMENT OF MAKER FOR EXTENSION.—A stipulation in a promissory note that the maker consents to an extension of the time of payment does not render the note non-negotiable where there is nothing in the stipulation which would give anyone the right to demand of the holder of the note an extension of time of payment, the time at which the holder could demand payment being definitely fixed.

(1) 8 C. J., p. 119, n. 28, p. 150, n. 64.    (2) 8 C. J., p. 150, n. 64.
(3) 8 C. J., p. 140, n. 3.    (4) 8 C. J., p. 140, n. 3.

APPEAL from a judgment of the Superior Court of Orange County. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

Black, Hammack & Black, Meserve & Meserve and Timon E. Owens for Appellant.

Ames & McFadden, H. L. Dearing and Underwood, Burke & Cree for Respondent.

SHENK, J.—On the judgment-roll alone the defendant appeals from a judgment in favor of the plaintiff for $5,000 and interest on a promissory note. The complaint sets forth a copy of the note which is as follows:

"$5,000.00          Capistrano, California, Dec. 22, 1922.

"Six months after date, for value received, I promise to pay to the order of myself Five Thousand & No/100 Dollars payable at Any bank in Santa Ana, California, with interest at eight per cent. per annum from date until maturity.

"And if interest or principal is not paid when due, then accrued interest and principal are to draw interest at the rate of ten per centum, per annum until paid, together with all attorney's fees and other costs and charges for the collection thereof. The makers, sureties, endorsers or guarantors severally waive presentment, protest and notice of protest, and the said sureties, endorsers and guarantors

further all and singular, waive the plea of discussion and division. Also agree that time for payment may be extended without further notice. This note authorizes any bank or banker to discount same for cash. There are no offsets or conditions against this note.

"No. 6379.

"The makers of this note must sign upon

"($1.00 in cancelled I. R. S.)

"BLANCHE L. DOLPH."

Indorsements: "Blanche L. Dolph. Capistrano."

In addition to other appropriate allegations the complaint alleged that on the twenty-second day of December, 1922, the defendant executed said note and on the same day "sold, assigned, indorsed, and transferred said promissory note to the Leach-Biltwell Motor Car Company, a corporation"; that thereafter on the same day "and prior to the maturity of said promissory note said Leach-Biltwell Motor Car Company, did, for a valuable consideration sell, transfer and deliver said promissory note to the plaintiff herein and that the plaintiff is now the owner and holder thereof." The defendant answered, setting up as an affirmative defense that she was induced to execute and deliver said promissory note in payment for stock in said corporation and solely by reason of certain representations made to her by the agents of said corporation which were false and fraudulent. She further alleged that shortly after the execution and delivery of the note she ascertained that the said representations were false, and she immediately rescinded the transaction and notified all parties in interest and every bank and banking institution in Southern California, including the plaintiff, that she had canceled and rescinded said transaction. The court found that the representations and statements were made to the defendant by the agents of the Leach-Biltwell Motor Car Company as alleged; that they were false and that they were the inducing cause of the execution and delivery of said note, but that said notice was not given by the defendant nor received by the plaintiff until after it had purchased said note and "that it purchased said note in good faith in due course of business and for a valuable consideration prior to the maturity thereof and without notice or knowledge of any equities or

defenses in favor of the defendant.'' The court thereupon rendered judgment for the plaintiff upon its conclusion of law that the note was negotiable in form and that under the facts found the plaintiff was entitled to judgment notwithstanding the equitable defense alleged and proved. The sole question for determination is whether the note sued on is negotiable in form. If the trial court was correct in holding that it is negotiable in form the judgment must be affirmed. If it be held to be non-negotiable in form the matters alleged and proved were a complete defense and the judgment must be reversed.

[1] It is first contended by the defendant that the said note is non-negotiable by reason of the inclusion therein of the words ''charges for collection.'' Section 3082, subdivision (2), of the Civil Code, adopted as part of our Uniform Negotiable Instruments Law in 1917, provides that an instrument in order to be negotiable ''must contain an unconditional promise or order to pay a sum certain in money.'' Section 3083, subdivision (5), of the Civil Code, adopted also as a part of the same law, provides that the sum payable is a sum certain within the meaning of the act, although it is to be paid ''with costs of collection or an attorney's fee, in case payment shall not be made at maturity.'' The instrument here in question does not contain an accelerating clause at the option of the holder for the nonpayment of interest. No interest is due in any event under the provisions of the note until maturity. The agreement as to interest clearly is that if interest at eight per cent per annum be not paid at maturity then the accrued interest and principal would draw interest at the rate of ten per cent per annum until paid. If the note be not paid at maturity the holder could take steps to enforce payment with the necessary costs of collection. [2] The instrument is poorly punctuated and not precisely worded, but without doubt the agreement contemplated by the parties was no more than to pay attorney's fees and costs of collection in case of nonpayment as permitted by the statute. The insertion of the word ''charges'' could add nothing to the agreement so permitted and when inserted did not destroy the negotiability of the note (*Davis* v. *McColl*, 179 Mo. App. 198 [166 S. W. 1113]; *Ex parte Bled-*

*soe,* 180 Ala. 586 [61 South. 813] ; *Letcher* v. *Wrightsman,* 60 Okl. 14 [158 Pac. 1152]).

It is next contended that the note is non-negotiable for uncertainty in time of payment. The contention is predicated upon the fact that the note contains an agreement on the part of "the makers, sureties, indorsers or guarantors" that time of payment may be extended without further notice. Incidentally it is urged that the note is uncertain as to what parties agree to an extension of time of payment for the reason that the agreement for extension is set apart from the sentence which precedes it by a period. If a comma or a semicolon had been there used we apprehend no claim of uncertainty would have been urged. It is argued that because of the period it cannot be determined whether the maker alone or the sureties, indorsers, and guarantors as well as the maker agree that time of payment may be extended without notice. Whatever punctuation be used between the two sentences it is clear that both the maker and the sureties, indorsers, and guarantors severally agree that time of payment may be extended without further notice.

[3] It is well settled that a stipulation in a note that sureties, indorsers, and guarantors consent that time of payment may be extended without notice thereof does not destroy negotiability (*McDonald* v. *Mulkey,* 32 Wyo. 144 [231 Pac. 662] ; *Farmer* v. *Bank of Graettinger,* 130 Iowa, 469 [107 N. W. 170] ; *De Groat* v. *Focht,* 37 Okl. 267 [131 Pac. 172]).

[4] The question then is, whether a stipulation expressed in the note that the maker consents to an extension of the time of payment renders the note non-negotiable. Upon this point the authorities from other jurisdictions are not in harmony and the precise point seems not to have been adjudicated in this state, although the reasons which would logically lead to a declaration that such an agreement does not destroy negotiability are stated in *Navajo County Bank* v. *Dolson,* 163 Cal. 485 [41 L. R. A. (N. S.) 787, 126 Pac. 153], where it is declared at page 491: "When it is said that the time of payment must be stated with certainty, the time referred to is that when the holder can insist on payment. Therefore, if the time when the holder has the absolute right to demand payment is prescribed with certainty the note is negotiable so far as this objection is concerned.

[Citing cases.]'' (19 Cal. Jur. 814.) It is true that the Navajo Bank case involved the construction of a note containing an agreement that *after maturity* the note might be extended with no impairment of liability, but the statement of this court above quoted is in accord with the trend of modern authority and affords a satisfactory reason for holding that the instrument involved herein fixes with certainty the time of payment as required by subdivision (3) of section 3082 of the Civil Code, which provides that an instrument to be negotiable ''must be payable on demand, or at a fixed or determinable future time.'' A demand note, which is payable at the option of the holder, is expressly made negotiable by the statute. The note involved herein definitely fixed the time of payment at six months after December 22, 1922. The date of maturity so fixed was a fixed future time and was a time when the holder of the note might insist on payment. No power was granted to the maker to extend the time of payment without the consent of the holder. In *First National Bank* v. *Buttery*, 17 N. D. 326 [17 Ann. Cas. 52, 16 L. R. A. (N. S.) 878, 116 N. W. 341], the note in question contained the provision that: ''The makers and indorsers herein severally . . . consent that the time of payment may be extended without notice.'' It was argued in that case that under this provision the holder of the note might without notice extend the time of payment indefinitely, thereby rendering the note non-negotiable for uncertainty of time of payment. The court said: ''It is strenuously argued that the use of the word 'makers' in the waiver admits of an extension being made at any time on the part of the holder, by mere secret mental process unknown to any other party. This may be true as a psychological fact, but we do not deem it so as a matter of practice in commerce and banking. . . . Holders of notes do not, by a secret mental process, make an extension of time of payment, but such extension, if made at all, is made by an agreement between the principal debtor and the holder of the paper, either with or without the consent of the indorsers.''

It would unduly prolong this opinion to review the many cases involving the same or similar provisions in promissory notes under the law-merchant of the several states. They are extensively annotated and commented upon in the cases

hereinafter mentioned. The supreme court of Tennessee has briefly stated the reasons and cited the authorities which indicate the correctness of the holding that the inclusion of such a provision in a note does not destroy its negotiability. The law of Tennessee with reference to certainty of time of payment is in the identical language of our own statute. In *Bank of Whitehouse* v. *White,* 136 Tenn. 634 [191 S. W. 332], the effect of the following provision on the part of the obligors on a note was involved, to wit: "We authorize the holder thereof to extend the payment of the same, or any part thereof, without impairing our joint and several liabilities, and the sureties agree to waive notice of any extension of time." It was held that such a stipulation in the note did not destroy its negotiability. The court said: "We construe the clause in the note quoted above, to relate and to give assent to extensions that may be granted at or after maturity, the date of which is set forth with certainty in the note; or to an extension which, if made prior to maturity, has operative effect as from the time when the note falls due according to tenor; and we are of opinion that when so construed the clause should not render the note [non]negotiable, whether we view the question from the standpoint of principle, precedent or policy.

"Principle: As already observed, the note as executed is stipulated to mature on a date fixed and certain. The provision for extension does not put it in the power of the holder to extend the note without the concurrence of the maker, and the latter may not force an extension on the holder. When they concur, a new date of maturity is fixed, and one no less certain than the original date. The sureties merely assent in advance thereto and bind themselves to waive the right of defense that might otherwise accrue; or to be bound by the supplemental contract which fixes the later maturity date. There is no agreement embodied in the note operating to bind the holder to extend. There is incorporated no promise to do anything that would, of its force, affect the unconditional promise to pay on the date named in instrument. There is nothing in the note that looks towards an indefinite extension of time of payment.

"Precedent: Cases that pass on this question may be found collated in 8 Cor. Jur. 140, 17 Ann. Cas. 55, and 15 L. R. A. (N. S.) 878; *Longmont Nat. Bank* v. *Loukonen,*

Ann. Cas. 1914B, 210; *Anniston Loan etc. Co.* v. *Stickney,* 31 L. R. A. 234; *Rossville State Bank* v. *Heslet,* 33 L. R. A. (N. S.) 738; *State Bank of Halstad* v. *Bilstad,* 49 L. R. A. (N. S.) 132. The cases which have appeared since preparation of the last of these notes demonstrate that the above is fast becoming the settled construction of the Negotiable Instruments Act. (*First Nat. Bank* v. *Stover,* 21 N. M. 453 [Ann. Cas. 1918B, 145, L. R. A. 1916D, 1280, 155 Pac. 905]; *First Nat. Bank* v. *Baldwin,* 100 Neb. 25 [158 N. W. 371]; *City Nat. Bank* v. *Kelly,* 51 Okl. 445 [151 Pac. 1172]; *Davis* v. *McColl,* 179 Mo. App. 198 [166 S. W. 1113].)

"Policy: Such a provision for extension not infrequently operates to the advantage of a surety in permitting the holder, at his option, safely to give grace to the maker, on the latter's application; when otherwise, pressure for payment might come inconveniently upon both maker and surety. It is common practice to embody such a provision in notes; the clause tends to give currency to the note, and the policy of the law should be in furtherance of the negotiability of such widely used instruments when they fairly fall within the spirit of the provision of the uniform act. *White* v. *Hatcher,* 135 Tenn. 609 [188 S. W. 61]; *Pemiscot County Bank* v. *Bank,* 132 Tenn. 152 [177 S. W. 74]."

Among the cases holding that a provision such as the one now before us does not destroy negotiability are the following, many of which contain elaborate notes and collation of authorities on the subject: *First National Bank* v. *Stover* (1916), 21 N. M. 453 [Ann. Cas. 1918B, 145, L. R. A. 1916D, 1280, 155 Pac. 905]; *First National Bank* v. *Baldwin* (1916), 100 Neb. 25 [158 N. W. 371]; *City National Bank* v. *Kelly* (1911), 51 Okl. 445 [151 Pac. 1172]; *Davis* v. *McColl* (1914), *supra; Bank of Whitehouse* v. *White* (1917), *supra; Holliday State Bank* v. *Hoffman,* 85 Kan. 71 [Ann. Cas. 1912D, 1, note, p. 7, 116 Pac. 239]; *Stitzel* v. *Miller,* 250 Ill. 72 [34 L. R. A. (N. S.) 1004, 95 N. E. 53]; *City National Bank* v. *Goodloe-McClelland Com. Co.,* 93 Mo. App. 123; *National Bank of Commerce* v. *Kenney* (1904), 98 Tex. 293 [83 S. W. 368]; *Russell* v. *Wyant,* 214 Mo. App. 377 [253 S. W. 790]; *Missouri-Lincoln Trust Co.* v. *Long,* 31 Okl. 1 [120 Pac. 291]; *Protection Ins. Co.* v. *Bell,* 31 Conn. 534; *Capron* v. *Capron,* 44 Vt. 410; see note to *Kimpton* v. *Studebaker Bros. Co.,* 125 Am. St. Rep. 202.

Of the cases adhering to a contrary doctrine the following may be noted: *Cown* v. *Spencer,* 39 Fed. 262; *Union Stockyards National Bank* v. *Bolan,* 14 Idaho, 87 [125 Am. St. Rep. 146, 93 Pac. 508]; *National Bank* v. *Gunter Bros.,* 67 Kan. 227 [72 Pac. 842]; *Woodbury* v. *Roberts,* 59 Iowa, 348 [44 Am. Rep. 685, 13 N. W. 312]; *Citizens Nat. Bank* v. *Piollet,* 126 Pa. St. 194 [12 Am. St. Rep. 860, 4 L. R. A. 190, 17 Atl. 603]; *Smith* v. *Van Blarcom,* 45 Mich. 371 [8 N. W. 90]; *Glidden* v. *Henry,* 104 Ind. 278 [54 Am. Rep. 316, 1 N. E. 369].

The appellant concedes that the interpretation we place upon the language of the note in question is in harmony with the modern doctrine on the subject, but insists that the older cases are in a majority and better reasoned. The trend of modern authority is unquestionably opposed to the appellant's construction of the note. We are satisfied with the reasoning of these later cases. It appears to us to be the better rule and is in harmony with the statement of this court in *Navajo County Bank* v. *Dolson, supra.* Such an interpretation, in conjunction with the recent cases in other jurisdictions, tends for stability and uniformity in the interpretation of the Uniform Negotiable Instruments Law adopted in this state and in nearly all of the other states of the Union (*Utah State Bank* v. *Smith,* 180 Cal. 1 [179 Pac. 160]). As there is nothing in the stipulation in the note under consideration which would give anyone the right to demand of the holder of the note an extension of time of payment, we conclude that the time at which the holder could demand payment was definitely fixed and that therefore the note is negotiable in form.

The judgment is affirmed.

Richards, J., Seawell, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.