RUTH SHELTON, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 11, 1912.

1. NEGLIGENCE: Humanitarian Rule. Plaintiff's husband was walking, at night, on the trestle of a bridge over which street cars were operated when a street car came up behind him and he was struck and killed. Had he looked he could have seen the car coming in ample time to have stepped aside, but was apparently unaware of its approach. The motorman could have seen him in time to have avoided striking him. The trestle had been constantly and notoriously used by the public as a footpath. *Held*, that the evidence was sufficient to take the case to the jury on the issue of negligence under the humanitarian rule.

2. FOREIGN LAWS: Pleading. When one relies on the laws of a foreign country or of a sister state for his cause of action he is required to plead the law of the foreign jurisdiction. Such a law is to be pleaded and proven as a fact.

3. ———: **Failure to Plead: Demurrer.** If the failure to plead the laws of a sister state is allowed to pass unchallenged before trial, the defect will be deemed cured by an answer to the merits.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*John H. Lucas* and *James E. Nugent* for appellant.

(1) The court erred in the admission of testimony offered by plaintiff. (2) The court erred in not granting the peremptory instruction asked by defendant at the close of plaintiff's case and at the close of the entire case. Mason v. Railroad, 27 Kan. 83; Railroad v. Schmidt, 67 Kan. 8; McIlhoney v. Railroad, 120 N. C. 557; Beck v. Railroad, 25 Oregon, 32; Zirkle v. Railroad, 67 Kan. 77; Ry. Co. v. Withers, 69 Kan. 620; Railroad v. Holland, 60 Kan. 209; Lamb v. Railroad, 73 Kan. 220; Bressler v. Railroad, 86 Pac. 472; Burgess v. Railroad, 83 Kan. 497; Railroad v. Clinkenbeard, 72 Kan. 559; Dyerson v. Railroad, 74 Kan. 528, and cases cited. (3) The court erred in giving instruction for the plaintiff.

*Oldham & James* for respondent.

JOHNSON, J.—Plaintiff commenced this suit in the circuit court of Jackson county to recover damages for the death of her husband which she alleges was caused by negligence of defendant.

The cause of action, if one exists, arose in Kansas and the petition pleads statutes of that State which, in certain instances, give to the widow of one whose death is caused by the negligence of another the right to maintain an action in damages. [Secs. 5319, 5320, Dassler's Gen. Stat. of Kansas, 1905.] Facts

are alleged which bring plaintiff within the operation of those statutes and a cause of action founded on what is known in this State as the "humanitarian doctrine" is pleaded. The petition does not plead the laws of Kansas relating to this species of negligence. Defendant did not attack the petition by demurrer or motion but filed an answer tendering the general issue. A trial to a jury resulted in a verdict and judgment for plaintiff in the sum of five thousand dollars and after unsuccessfully moving for a new trial and in arrest of judgment, defendant appealed. The death of plaintiff's husband occurred a few moments after nine o'clock in the evening of June 8, 1909, in Kansas City, Kansas, at a place where the double tracks of one of defendant's street railway lines cross Reynolds avenue. This is a public street running east and west which crosses Sixth street at right angles. The two streets are on different levels, Reynolds avenue being much lower than Sixth street. Going south and east the tracks of defendant's railway run on Sixth street to a point just north of Reynolds avenue where they deflect to the southeast, leave Sxith street, which continues on south, and cross Reynolds avenue on an open trestle bridge. The bridge on Sixth street over Reynolds avenue is a short distance west of this railroad bridge which is east of the east line of Sixth street. The latter bridge is about seventy-five feet long and is double-tracked. South bound cars run on the west track and it was one of such cars that killed the husband of plaintiff.

There is strong evidence introduced by plaintiff which tends to show that the railway tracks from Sixth street southeastwardly had became a highway for pedestrians and that such user had been so general and continuous that defendant must be held to have had knowledge of it and to have acquiesced in it. The husband of plaintiff used this pathway. He approached the trestle bridge from the southeast along

the west track and without stopping and, apparently, without looking ahead, proceeded to walk over the bridge. He had advanced some ten or twelve feet on the bridge, walking on the crossties, when a south-bound electric street car struck him and inflicted fatal injuries. The car carried an electric headlight, the way was unobstructed, and there was nothing to prevent the unfortunate man from seeing the car in ample time to escape injury, nor to prevent the motorman from seeing him in time to save him by stopping the car or giving warning signals. There is credible evidence to the effect that the deceased made no effort to avoid the car and appeared to be oblivious of its approach until an instant before the collision and that the motorman did not sound the bell nor attempt to stop until the moment of the collision. The speed of the car was six or eight miles an hour and under the conditions obtaining, the car could have been stopped in approximately twenty-five feet. The night was dark and a rain storm was impending but there was enough light cast by more or less distant street lamps to enable witnesses who lived on Reynolds avenue to observe the man go on the trestle and proceed in a manner indicative to them of inattention to his way. He wore a broad brim soft hat tilted forward and walked with downcast face. Counsel for defendant insist that the darkness was too great for these witnesses to discern these appearances and that their testimony should be discarded as wholly incredible but we think their credibility was an issue for the jury. They were on a much lower plane than the bridge,—in looking up at the man saw him in silhouette,—and it does not seem impossible for his general outlines, attitude and movements to have been visible to them. The evidence does not show clearly whether the headlight carried on the car was of sixteen or thirty-two candle power. It was one or the other and we think it a fair inference from the evidence on this subject that a

thirty-two candle power light was carried. The jury were entitled to find from all of the evidence that the headlight was strong enough and illuminated the track ahead a sufficient distance for the motorman to have seen the man on the track in ample time to have stopped the car in the intervening space. Had the man become aware of the approach of the car sooner than he did he had two avenues of escape open to him, viz.: to retrace his steps over the ties to solid ground and then leave the track, or to cross over to the other track on the bridge. Each track was on a separate trestle but the two were divided by a space that easily might have been crossed in a single step. These are the salient facts of the case and the principal issues of law we are called upon to determine are those raised by the demurrer to the evidence which defendant argues should have been sustained.

The first question we shall consider is that of the sufficiency of the facts we have stated to support the charge that the death of plaintiff's husband was caused by negligence of defendant in failing to discharge a humanitarian duty it owed him. That the deceased was guilty of negligence that brought him into a perilous situation is a proposition that cannot be and is not disputed. If before going on to the bridge he had but lifted his eyes he would have seen the car approaching and would have realized that he could not cross the bridge in safety on the west track. And even after he was on the bridge he still could have escaped had he exercised reasonable care, either by turning back or by crossing over to the east track. The car was not coming fast and its headlight illuminated the track. He was a vigorous man in the possession of unimpaired faculties, and the only reasonable explanation that may be given of his conduct in allowing the car to run him down is that he was walking, as plaintiff's witnesses say, with his attention diverted from the oncoming car and apparently riveted on the

way immediately in front of his feet. The darkness was of a degree to require the exercise of special attention in walking over separated crossties and, doubtless, the deceased found it a difficult and absorbing task to walk the ties in safety. No exculpatory explanation can be given for his conduct in going on the bridge with the car visible and in menacing proximity. He knew a car might come at any moment and it was his duty to ascertain before going on the bridge that none would dispute his safe passage over a place so dangerous. A railroad track is a place of danger and the use of a railroad trestle bridge by a pedestrian is especially dangerous. In view of the proof of a general and continuous use of the bridge by pedestrians both by day and by night we shall not say that any attempt of a pedestrian to cross the bridge in the night would be negligent in law, but we do say that one so using the bridge should exercise care commensurate with the dangers of the undertaking and that the deceased did not exercise any care but negligently placed himself in a situation of extreme peril. Such negligence precludes a recovery by plaintiff unless the evidence will support a reasonable conclusion that the motorman, had he been observing ordinary care, would have discovered the peril of the deceased in time to have saved him. The humanitarian rule is designed to deal with instances where, regardless of the cause of the perilous position of the traveler, the engineer or motorman of the approaching engine or car, in the proper performance of his duty, would have observed the danger and averted it, either by stopping or giving warning signals, but negligently or wantonly failed to perform such humane duty.

It does not follow from the mere fact that a traveler is on the track in a dangerous place that the engineer or motorman must see him at the first moment and hasten to stop the engine or car, or give warning signals. An engineer or motorman is required to

keep a sharp lookout for pedestrians only at places where he has reason to apprehend they may be on the track and is not held to the exercise of watchfulness at places where a pedestrian could not be present except as a trespasser. And the authorities generally and properly say that a railroad trestle bridge is no place for foot travelers, and that an engineer is not required to anticipate the presence of a traveler at such places and to be on the lookout for him. But where as in the present case a bridge of this character has been used by the public as a footpath so constantly and notoriously as to raise the presumption that the company has knowledge of such use, and by taking no steps to prevent it has silently acquiesced in it, the company is bound to anticipate that the use will be continued and to maintain the same vigilance in looking for travelers at such place as it would at places where people have a right to go upon the track, such as public crossings. The motorman in the case in hand was bound to anticipate the presence of travelers on the bridge and owed the deceased the duty of reasonable care to discover him there. The evidence shows that the motorman, with the aid of the headlight, could have seen the deceased some seventy-five feet away and could have stopped the car in twenty-five feet. These facts of themselves would not be sufficient to support an inference of negligence on the part of the motorman. The mere fact that a traveler remains on the track after the approaching car is in threatening proximity would not indicate that he is unaware of the approach of the car and will not leave the track in time to avoid injury. The humanitarian rule does not call for action on the part of the motorman until something in the appearance or attitude of the traveler proclaims to the watchful eye and careful mind that he is oblivious to his peril and will not or cannot save himself. [Veatch v. Railroad, 145 Mo. App. 232; Bennett v. Railway, 122 Mo. App. 703.]

Travelers often stay on the track until the last min-
ute and it would be unjust to require the operator of
a car to stop or give warning every time he saw an
able-bodied man on the track ahead. But we find facts
and circumstances disclosed by the evidence that do
support a reasonable inference that the peril of the
deceased and his obliviousness and helplessness were
obvious at a time when the car could and should have
been stopped. The trestle presented obstacles to a
hasty escape which were enhanced by the darkness.
Whether he retreated by the way he came or crossed
over to the other track, the deceased had to be careful
of his movements and could not proceed with celerity.
In this respect the case is similar to that of William-
son v. Railroad, 139 Mo. App. 481. And further, the
forward bend of the head of the deceased, the position
of his hat, the close attention he was giving his steps,
and his unaltered progress were suggestive of his com-
plete absorption by other objects of attention than
the menacing danger. In these particulars the case is
analogous to that of Smith v. Railroad, 129 Mo. App.
413, where we held the engineer was bound to take
notice of such suggestive indications of obliviousness
on the part of the endangered traveler. We conclude
the evidence of plaintiff was sufficient to take the case
to the jury on the issue of negligence under the human-
itarian rule.

It is argued by counsel for defendant that the pe-
tition is fatally defective and will not support the judg-
ment for the reason that it fails to allege facts show-
ing that plaintiff had a cause of action under the laws
of Kansas for the death of her husband. This insuffi-
ciency of the petition was allowed to go unchallenged
by defendant until the motion in arrest, and the ques-
tion we must decide is whether or not the defect is
one that cannot be cured by verdict.

Defendant is right in the contention that plaintiff
could have no cause of action in this State if she had

none under the laws of Kansas. As is said by LAMM, J., in Newlin v. Railroad, 222 Mo. l. c. 391: ''No case under the *lex loci*, then no case under the *lex fori*.'' We applied this rule in Chandler v. Railway, 127 Mo. App. 34, and Rahn v. Railroad, 129 Mo. App. 686. Further we concede it was the duty of plaintiff to plead all of the facts constitutive of her cause of action which includes the fact that she had a cause of action under the laws of the State where injury occurred. ''When one relies on the law of a foreign country or of a sister State for his right of action he is required to state in his pleading what the law of the foreign jurisdiction is. Such a law is to be pleaded and proven as a fact.'' [Lee v. Railway, 195 Mo. l. c. 415.]

The humanitarian rule is a common law not a statutory rule and in the absence of proof to the contrary the presumption would be indulged that it is recognized in the jurisprudence of a common law State and in an action prosecuted in our courts to enforce a cause which originated in a common law State it would not be necessary to plead and prove that the humanitarian rule obtains in such State since we would assume until it otherwise appeared that the general jurisprudence of a sister State having the common law is the same as our own. The territory of which the State of Kansas is a part never was subject to Great Britain but was a French possession at the time of its purchase by the United States. It was a stranger to the common law and no presumption can be indulged that its fundamental jurisprudence is the same as our own. Consequently the burden devolved on the plaintiff whose cause depends on a common law rule to plead and prove that such rule belonged to the jurisprudence of the State of Kansas and the omission of such averment from the petition made it vulnerable to attack by demurrer. [Mathieson v. Railroad, 219 Mo. 542.] But in a number of cases the Supreme Court hold that

the defect if allowed to pass unchallenged before trial will be deemed cured by an answer to the merits. By so answering the defendant, in effect, conceded that the petition stated a good cause under the laws of Kansas and will not be allowed to take a contrary position in the motion in arrest. As is well said in Lee v. Railway, supra: ''The defendant by its answer accepted the issue of fact tendered in the petition in the form as tendered; that is, without express reference to the laws of Kansas the petition stated that the accident was caused by the negligence of defendant, and the answer expressly denied that fact. By so joining issue the defendant united with the plaintiff in inviting judgment on the facts as pleaded.''

Though we cannot presume that the common law was adopted in Kansas we will presume, in the state of the pleadings before us, that the laws of that State are similar to our own laws, and that the humanitarian rule is recognized and applied there as it is here. [Lee v. Railway, supra, l. c. 415; Burdict v. Railway, 123 Mo. 221; State v. Clay, 100 Mo. 571; Coleman v. Lucksinger, 224 Mo. 1; Biggie v. Railroad, 159 Mo. App. 350.]

The demurrer to the evidence was properly overruled. In what we have said we have answered the other points made by counsel for appellant in their brief. The action was fairly tried and the judgment is affirmed.

All concur.