ROSE ROSITZKY v. IKE ROSITZKY, Appellant.— 46 S. W. (2d) 591.

Division One, February 11, 1932.

*Mayer, Conkling & Sprague* for appellant.

666

*Manard & Schwimmer* for respondent; *Joe E. Burris* and *Carroll W. Berry* of counsel.

STURGIS, C.—By this suit plaintiff, as widow of Philip Rositzky, deceased, seeks to recover damages on account of her husband's death,

caused, as she claims, by reason of defendant's negligence. The petition alleges that plaintiff's said husband was at the time of his death riding as a guest of his brother, the defendant, in his brother's automobile, owned and operated by him, and that such automobile was so recklessly and negligently driven and operated by defendant that same turned over into the ditch at the roadside and was wrecked, resulting in plaintiff's husband being instantly killed. It is further alleged that the death of plaintiff's husband, and defendant's negligence in causing the same, occurred in the State of Iowa, near Story City, while defendant and his brother, plaintiff's husband, with other guests, were driving in defendant's automobile on one of the public roads of Iowa. As one of the grounds of defendant's negligence, it is alleged that defendant was operating his automobile in violation of a section of the statutes of Iowa regulating the speed of automobiles on its public highways; and plaintiff also pleads an Iowa statute making operators of motor vehicles liable for damages to persons riding as guests in case the damage results from the reckless operation of the car by the driver. As the case is presented here, the question of defendant's negligence in causing plaintiff's husband's death is not controverted. Plaintiff's theory of her cause of action is summed up in the last clause of the petition thus:

"Plaintiff states that by reason of said reckless and careless and negligent acts and conduct on the part of the defendant, which caused and resulted in the death of her husband, said Philip Rositzky, she was and has been for all future time deprived of his care, support and maintenance, and that by reason thereof plaintiff is entitled to recover of the defendant in the sum of $10,000 as the penalty provided by statute" (of Missouri).

The petition does not plead or mention any statute or law of Iowa, where the death occurred, giving damages to anyone or creating or transmitting a cause of action to anyone on account of the wrongful death or death from negligence occurring in that state. However, the defendant filed his answer, being a general denial, and the case went to trial before a jury, resulting in a verdict and judgment for plaintiff for $10,000, and defendant appeals.

At the trial the defendant objected to the introduction of any evidence supporting the petition, on the ground that the petition fails to state a cause of action in plaintiff's favor. At the close of plaintiff's evidence, which showed the place and manner of the death of plaintiff's husband and established a case of negligence on defendant's part causing such death, the defendant presented a demurrer to the evidence asking for a directed verdict in his favor. This was repeated at the close of all the evidence. The court ruled in plaintiff's favor in all these matters, and defendant's exceptions to the court's rulings are duly preserved. These are the only mat-

ters presented on this appeal, the one going to the sufficiency of the petition to state a cause of action, and the other to the sufficiency of the evidence to prove a cause of action.

Both these claimed fatal defects to plaintiff's case rested on the same foundation, to-wit, the failure to allege in the petition, and to prove at the trial, the existence of any statute or law of Iowa, where the death of plaintiff's husband and the cause thereof occurred, giving to any person (plaintiff) a cause of action for damages against another person (defendant) growing out of or based on such other person's negligence or wrongful acts causing or resulting in the death of a third person (in this case plaintiff's husband). The sole question presented by this appeal, therefore, is whether plaintiff, as widow, can recover in the courts of this State damages for the death of her husband caused by defendant's negligence or wrongful act in the State of Iowa, without pleading and proving some statute or law in force in that State giving her such right of action. This question plaintiff answers "yes," and defendant answers "no."

In solving this question we can state that the law unquestionably is, and we think defendant concedes, that under the common law no action lies for damages growing out of the death of a human being caused by the wrongful or negligent act of another causing such death. [17 C. J. 1181 and 1258; McNamara v. Slavens, 76 Mo. 329, 330; Wells v. Davis, 303 Mo. 388, 398; Gilkeson v. Railroad, 222 Mo. 173, 185.]

It is said by the Supreme Court of the United States in Mobile Life Ins. Co. v. Brame, 95 U. S. 754, that the proposition, that by the common law no civil action lies for an injury which results in death, is so well established that it cannot be spoken of as an open question. And in Wells v. Davis, supra, this court said: "At common law no action lay for damages caused by the death of a human being by the wrongful or negligent act of another, in favor of the heirs or personal representative of the deceased. This was uniformly held and to that effect many Missouri decisions are cited in Gilkeson v. Railroad, 222 Mo. 185." There is a maxim of the common law to the effect that a right of action for damages for personal injuries to a person dies with the person.

The fact that the various states of this country have found this rule of the common law so unjust or "barbarous," as some courts have said, as to impel the enactment of statutes changing the rule in favor of heirs or dependents of the deceased, may justify the change being made, but in nowise argues against such being the law except when so changed.

The corollary of the above statement of the common law is that actions for damages on account of the death of any person are strictly of statutory origin and exist and can be maintained only when

there is a statute in force at the time and place of the injury creating and giving to the person suing such right of action. See 12 C. J. 452; 17 C. J. 1262; McGinnis v. Missouri Car & Foundry Co., 174 Mo. 225, 233; Newlin v. Railroad, 222 Mo. 375, where the court held that in an action for death based on defendant's failure to block a railroad switch, the fact that the Missouri statute so required would not avail plaintiff. See, also, Lee v. Railroad, 195 Mo. 400, 416, and 419; McNamara v. Slavens, 76 Mo. 329, 330.

In McGinnis v. Missouri Car & Foundry Co., supra, the court said: "The accident occurred in Illinois. Without the statute of that State, there would be no liability or cause of action anywhere or in favor of any one, no matter what might be the law of this or any other State in reference to similar accidents that happened here or there. In short, the whole matter depends upon the Illinois statute. That statute confers a right of action upon the administrator, and not upon the widow or next of kin."

It follows from the foregoing, or is rather a re-statement of the same proposition, that the law of the state or place where the injury resulting in death occurs, determines in all cases whether any or the particular action in question for damages growing out of such death can be maintained. [17 C. J. 1275.] As tersely stated in Newlin v. Railroad, 222 Mo. 375, 391, "no case under the *lex loci*, then no case under the *lex fori.*" [Root v. Railway, 195 Mo. l. c. 370; Taylor v. Casualty Co., 216 Mo. App. 599, 604; McGinnis v. Missouri Car & Foundry Co., 174 Mo. 225, 229, and 230; Shelton v. St. Railway, 167 Mo. App. 404, 411; Chandler v. Railroad, 127 Mo. App. 34.]

In Taylor v. Casualty Co., supra, the court said: "The rule is well settled in this State that the laws of the state where the injury occurred determine whether or not a cause of action exists on account of such injury."

It follows from the foregoing that the law necessarily is that as the statute in force at the time and place of the injury determines and creates the liability against the wrongdoer whose negligence causes the death, it also determines the person who may sue for and recover such damages, and no one else can maintain such action since no one else has such a cause of action. [12 C. J. 454; 17 C. J. 1285; Clark v. Railroad, 219 Mo. 524, 538; Bonnarens v. Lead Pelt Ry. Co., 309 Mo. 65, 73; McGinnis v. Missouri Car & Foundry Co., 174 Mo. 225, 229, et seq.; Gilkeson v. Railroad, 222 Mo. 173, 185 McNamara v. Slavens, 76 Mo. 329, 330.]

In the last cited case this is said: "Neither the husband, nor wife, nor children, had at common law, an action for the death of the husband, or wife, or parent, under the circumstances mentioned in our statute. It is a cause of action created by the statute, and no one can sue unless he brings himself within its terms."

And in the McGinnis case, supra, this is said: "In Oates v. Railroad, 104 Mo. 514, the widow brought the action. The accident occurred in Kansas. It was held that the cause of action was created by the statute of Kansas, and that statute which created the right, prescribed who should enforce the right, to-wit, the personal representative, and that no other person could maintain the action. . . . A liability or a cause of action that does not exist under the common law, can only be created by the lawmaking power of a sovereign State, or of the United States in proper cases. And when the laws of the creating State prescribe the person who shall enforce the right, no other person in that or any other State can enforce it. The law must be enforced as written or not at all."

In Bonnarens v. Lead Belt Ry. Co., supra, the law is stated thus: "In Clark v. Railroad, 219 Mo. 534, . . . LAMM, J., said: '. . . Furthermore, as the right of action is only of statutory origin, the Legislature had the right in creating it to prescribe a preclusive remedy, and nominate those entitled to sue and the terms on which they could sue and has done so. In Barker v. Railroad, 91 Mo. l. c. 94, it was said: "In statutory actions of this sort, the party suing must bring himself strictly within the statutory requirements necessary to confer the right, and this must appear in the petition; otherwise, it shows no cause of action." The doctrine so announced is bottomed on the reasoning in McNamara v. Slavens, 76 Mo. 329, and in Coover v. Moore, 31 Mo. 574—the latter case holding that: "There being thus no general right of recovery, open to all persons, representing the estate of the deceased, or interested in his life, only such persons can recover in such time, and in such manner, as is set forth in the statute." ' See also Chandler v. Railroad. 251 Mo. 592, 598, '. . . and Smith v. Allee, 245 S. W. 1117, 1118. Lacking this essential averment, the petition fails to state facts sufficient to constitute a cause of action."

In this connection it is well to remember that it is the settled law and almost axiomatic that the statutes of a state or country prescribe the law within its boundaries only and have no extraterritorial force or effect. [Schueren v. Railroad, 192 S. W. 965.] An action based on the statutory law of another state must accrue there and can only be .maintained in this State when so authorized by the law of this State, and in such cases the courts of this State enforce the laws of the other State as there written and interpreted. See State ex rel. v. Trimble, 292 Mo. 333, 337, where this court quoted with approval from the Court of Appeals thus: "In Cook v. Hines, 235 S. W. 156, this court held: 'It cannot be successfully contended that plaintiff has not the right in law to institute his suit in Missouri, and if he does so, the laws of the state where the accident occurred determined whether or not any cause of action exists for and on

account of the accident,' citing Keele v. Ry. Co., 258 Mo. 62, . . . Yost v. Railway, 245 Mo. 219; Newline v. Ry. Co., 222 Mo. 375.''

There is another well settled proposition of law applicable here to the effect that the courts of one state do not take judicial knowledge of the statutory law of another state or its judicial decisions interpreting such law. [Madden v. Railroad, 192 S. W. 455; Coleman v. Lucksinger, 224 Mo. 1, 14, 26 L. R. A. (N. S.) 934; Mathieson v. Railroad, 219 Mo. 542, 547; Rashall v. Railroad, 249 Mo. 509, 516.] From which it follows that if the statutory law of another state is or becomes a vital part of a cause of action, as is the case when the death by wrongful act occurred in such other state, the plaintiff must both allege and prove the statute of that state, without which no cause of action exists. [Mathieson v. Railroad, 219 Mo. 542, 548; Rashall v. Railroad, supra.]

''Where, however, the action is brought in a state where the injury did not occur, plaintiff must allege and prove the existence of a statute of the state where the injury occurred permitting such an action, although it is not necessary that the statute should be set out *in haec verba;* and if it appears, from the lack of such *averment and proof,* or from proof by defendant, that the laws of the state where the injury occurred provide for no such action, the suit must be dismissed for want of jurisdiction *without regard to the provisions of lex fori.''* (Italics ours.) [17 C. J. 1283, sec. 139, and note 23-c as to presumption.]

In the Madden case, supra, this is said: ''The courts of Missouri do not take judicial notice either of the judicial decisions or the statutory law of sister states. . . . Hence they can only be brought to the knowledge of the courts of Missouri where their consideration is essential to the sustention of a cause of action or a defense, by being both pleaded and proven by the party relying upon them. [Rashall v. Railway, 249 Mo. loc. cit. 516; . . . Clark v. Barnes, 58 Mo. App. loc. cit. 671.] It is also the settled law of this State that causes of action arising in another state or territory are governed by the local statutes and decisions of the place where they originated. [Riley v. Railway, 256 Mo. 596.]''

We are not overlooking the Act of 1927, now Section 806, Revised Statutes 1929, providing that, when properly pleaded, our courts shall take judicial notice of the public statutes of other states. It is just as essential now as previously to plead a statute of another state when same is essential to a cause of action, and the statute merely dispenses with formal proof of the same at the trial by requiring the courts to take judicial knowledge of the pleaded statute if there be such. Unless such foreign statute is properly pleaded, this statute has no application.

Tested by these principles of law, how stands plaintiff's case? The plaintiff sues for damages based on defendant's negligence causing her husband's death. Such an action is unknown to the common law and does not exist except by statute creating such cause of action. The action must be based on a statute. Such statute must exist and be in force where the wrongful death occurred. The death is alleged to have occurred in Iowa. Therefore, the statute on which this action rests must be an Iowa statute. The plaintiff sues in this State and the courts here cannot take judicial knowledge—that is, knowledge without proof—that there is or was such a statute in force in Iowa at the time of the negligent death. No such proof was offered. What conclusion can there be except that plaintiff fails to make a case? Without a statute in force, where the death was caused, giving someone (plaintiff) a right to recover damages therefor, no cause of action existed, and, under the law governing pleadings and procedure in our courts, the ultimate facts necessary to constitute a cause of action must be pleaded in order to be proved, and a petition failing to do so fails to state facts constituting a cause of action. Under our code of procedure, answering instead of demurring on this ground does not waive the point (Sec. 774, R. S. 1929), and if it did, there still remains the failure of proof.

Defendant cites a large number of cases from other states supporting the rules of law above stated and reaching the same conclusion we reach, which we need not discuss at length since plaintiff makes this admission: "As to the foreign cases cited by appellant, it is true that in most of them the doctrine contended for by appellant is borne out, namely, that absent any showing as to the law of a sister state, it will be presumed that the common law only exists therein, and therefore on such basis no action for wrongful death exists. These cases, with but one exception, are all earlier decisions of these foreign courts, and it will be well to note that there is not one decision in this State to the same effect, and none has been cited. This harsh rule as announced by the courts of some of our sister states does not and should not prevail in our courts."

We think plaintiff is mistaken in saying that no decision in this State fully sustains the result reached on similar facts. The case of Gibson v. Railroad, 225 Mo. 473, cannot be distinguished, as plaintiff attempts to do, on the ground that in that case plaintiff "attempted to rely upon the code of Iowa to sustain his cause of action. But here no such attempt is made."

It is true that in the Gibson case, where the facts are similar to those here, the plaintiff did make a feeble attempt to plead an Iowa statute giving the plaintiff the right to recover from the wrongdoer damages for causing a death—an attempt so feeble, however, as to amount to no plea at all, and so the court treated the petition the

same as if it contained no such plea, saying: "These allegations are in no sense statements of facts but are clearly conclusions of law drawn by the pleader; and, in passing upon the demurrer, they should be eliminated from the petition, for the reason that they are neither traversable nor demurrable." The defendant demurred to the petition for failure to state facts sufficient to constitute a cause of action, the failure being that while the action states that the death occurred in Iowa, "it fails to plead the Iowa statute governing such cases," as the court held it did. The result was that the court held that the demurrer was properly sustained on this ground. The time or method of raising this objection is not material.

Nor is this case distinguishable from Schueren v. Railroad, 192 S. W. 965, wherein the death complained of was alleged to have accurred in Illinois. The plaintiffs, parents of the deceased minor son, pleaded an Illinois statute giving an Illinois administrator of the deceased a cause of action in such a case, but not to the parents. It was also pleaded that no administrator was possible under the law of Illinois. This court, however, adhered to the rule which we have enunciated that, the cause of action being purely statutory, the statute creating it must also designate the person who could sue to enforce it, and no one else could do so for the reason that no one else had a cause of action. The plea of the Illinois statute, therefore, availed plaintiffs nothing and was stricken from the petition. Without this plea of an enforceable statute in Illinois giving plaintiffs a cause of action, the petition failed to state facts constituting a cause of action, and a demurrer was held properly sustained. The court there said: "Counsel for defendant contend that said statutes have no extraterritorial operation; that the negligence and death having occurred in the state of Illinois, there being no liability of the defendant under the common law, the cause of action was created by the statutes of that state pleaded in the petition, and that the right to recover the damages sustained thereunder must be determined by those statutes, and must be enforced by the person designated therein, and by no one else. There can be no question but what that contention is well founded."

Other cases might be cited, but these will suffice to show that this State is not out of line with other states on this question.

Plaintiff states her position in this case thus: "Since the respondent's petition states a cause of action under the laws of our State, and since the record is absolutely devoid of any showing as to what the law of Iowa may be as to respondent's right to maintain this action, it *should therefore be presumed* that the laws of Iowa are the same as the laws of our State, and the court was correct in trying the case on this question under our laws." And, speaking of the ruling in the Gibson case, supra, that this court could not take

judicial notice of the statutes of another state, plaintiff says: "We do not take issue with this ruling. However, in the case at bar, respondent did not attempt to rely upon the Iowa code giving to her the right to maintain her cause of action, and did not plead or attempt to plead the Iowa law in this regard, as was done in the Gibson case. Respondent, in the case at bar, relies upon the laws of *our State* to sustain her right to maintain this action and therefore was not required to plead or prove the Iowa laws.

We do not think, however, that plaintiff means that she relies on the laws of Missouri to maintain her action and "does not rely on the Iowa code as it actually exists" and therefore is not required to plead or prove the Iowa laws. What plaintiff doubtless means is, that in the absence of proof to the contrary, the courts of this State *presume* that the laws of Iowa are the same as the laws of Missouri, and that the courts will enforce the Iowa laws which are the same as the laws of Missouri; that the courts in cases of this kind accruing in Iowa must enforce the laws of Iowa, which alone can create a cause of action based on a death occurring there, but in order to ascertain what the laws of Iowa are, the courts of this State, in the absence of direct proof, read the laws of Missouri as and for the laws of Iowa and thus ascertain what the law is in Iowa; that the presumption takes the place of and supplies the pleading and proof; that the courts should treat the Missouri statutes as authenticated copies of the Iowa statutes. The argument is that the Missouri statutes are not given extraterritorial effect, but are transplanted for the occasion to the foreign soil; that this is different from the courts of our State taking judicial knowledge of the statutory law of another state, though with much the same result, for in taking judicial knowledge of such laws they come before the courts as they are and not as shown by a presumed copy.

To what extent, and when, will the courts of one state ascertain the laws of another state by presuming that the laws of the other state are the same as those of their own state? The plaintiff has cited a considerable number of cases in this State in which the statement is made that, in the absence of proof to the contrary, the courts will presume or assume that the law in the other state is the same as here. Without reviewing all such cases, we think that generally they deal with the general or common law—the corpus juris as recognized and administered in all the states—rather than to the local law which only exists by statutory enactment and is an addition to or change of the common law. There is a marked difference between statutory actions and common law actions in this respect.

As said in Morrissey v. Wiggins Ferry Co., 47 Mo. 521, 525: "There is no presumption indulged that the statutory law of New York is the same as ours. As a general rule, courts do not take notice of the laws

of a foreign country except so far as they are made to appear by proof. Where the condition of the law of another state becomes material, and no evidence has been offered concerning it, our courts will presume that the general principles of the common law, which we always consider to be consonant to reason and natural justice, prevail there. But no such presumption obtains respecting the positive statute law of the state. There is generally no probability in point of fact, and there is never any presumption of law that other states or countries have established precisely or substantially the same arbitrary rules which the domestic legislature has seen fit to enact."

And in Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 528, where a contract was sued on in this State where a statute made it illegal, but it was not so at common law, and being made in New York, the court said: "And in the absence of any showing to the contrary the presumption must be indulged that the common law prevails in that State."

Burdict v. Railroad, 123 Mo. 221, 229, was a common law action by the person injured, but, as the injury occurred in Kansas, it was insisted that the plaintiff must allege and prove his right to recover under the Kansas law, but the court said: "This is not a statutory action; if it were, the authorities cited would be in point. Upon the contrary, it is a common law action, transitory in its nature, and as the common law, in the absence of any showing to the contrary, is presumed to exist in Kansas, where the injury occurred, as it does in this State, it was not necessary that plaintiff should introduce any evidence with reference thereto."

And as illustrating the difference between a *statutory action,* such as the present one is, and a common law action, the court pointed out that, "Hyde v. Railroad, 61 Iowa, 441, was an action brought in Iowa by the administrator of one Hyde who was alleged to have been killed by the negligence of defendant in this state, purely a statutory action, and it was held that, as the administrator failed to show that by the laws of this State an action could be maintained for such injury by the administrator, such action could not be maintained in that State. Davis v. Railroad, 143 Mass. 301, was also a statutory action and in that case the same rule is announced. In Wooden v. Railroad, 126 N. Y. 10, relied upon by defendant, it is expressly held that an action for the injury to the person in another state is maintainable in New York without proof of the law of the place where the injury occurred, because permitted by the common law which is presumed to exist in the foreign state. It was also held that when the right of action depends upon the statute conferring it, it can only be maintained in another state upon proof that the statute law, in the state in which the injury occurred, gives the right of action."

In Rashall v. Railroad, 249 Mo. 509, 516, where the injury occurred in Illinois, and the question arose as to the application of the humanitarian doctrine, a question of general and not statutory law, this distinction was pointed out thus: ''If a foreign law is the foundation of a cause of action or a defense thereto, it must be both pleaded and proven. . . . The reason is, that our courts do not take judicial cognizance of the laws of sister States or foreign countries when they are issuable facts in any controversy. In such cases formal proof must be made just as of any other facts. . . . For when a question arises as to the non-statutory law of a sister State which has not been proven, and whose territory was a part of that over which the common law of England prevailed, the rule is clear that we will apply our own exposition of that body of law.''

The case of Lee v. Railroad, 195 Mo. 400, is relied on by respondent. There the widow and minor children sued for the death of the husband alleged to have been caused in Kansas by defendant's negligence. *The statute of Kansas giving such right of action growing out of a death was pleaded and proven.* The court there held in positive language that when one relies on the laws of a sister state for his right of action, as he must do when the cause of action arises there, ''he is required to state in his pleading what the law of the foreign jurisdiction is. Such law is to be pleaded and proven as a fact.'' The point there raised was that the law of Kansas as pleaded and proven gave a cause of action only when the deceased himself ''might have maintained an action had he lived,'' that is, that the defendant was guilty of such negligence as gave the deceased a cause of action if living. This negligence of defendant the plaintiff in the action must plead and prove, and it was on the question of what acts or facts constituted negligence in Kansas—a question of general law and not statute law—that the court said: ''When one relies on the law of a foreign country or a sister state for his right of action he is required to state in his pleading what the law of the foreign jurisdiction is. Such a law is to be pleaded and proven as a fact. . . . Under the facts stated in the petition, the deceased, if death had not ensued, could, under the laws of this State, if the injury had occurred here, have maintained an action for damages against the defendant, and in the absence of any showing to the contrary we will presume that the law of Kansas is like the law of Missouri on that point and will construe the petition liberally.'' And it was on this same question of whether the facts of negligence stated were sufficient to constitute negligence under the general law, that the court said that by answering instead of demurring, the defendant joined issue on the facts, and the petition would be construed liberally and be aided by the answer as to stating a sufficient ground of negligence.

In Shelton v. Street Railway, 167 Mo. App. 404, the court followed the Lee case, supra, and said: ''The humanitarian rule is a common law not a statutory rule and in the absence of proof to the contrary the presumption would be indulged that it is recognized in the jurisprudence of a common law State.''

This question received consideration by the Kansas City Court of Appeals in Madden v. Railroad, 167 Mo. App. 143, and by this court in the same case, 192 S. W. 455. At common law there is no action for personal injuries arising from the negligence of a fellow-servant the same as from injuries resulting in death. Such an action can be based only on a statute of the state where the injury occurred. The plaintiff in the Madden case sued for personal injuries received in Kansas, alleging defendant's negligence, but saying nothing of a fellow-servant or fellow-servant statute. The answer alleged that the injury was caused by the negligence of the fellow-servant and the evidence so showed. The Court of Appeals, on defendant's appeal, held, in accordance with the plaintiff's insistence here, that while it was necessary to allege and prove a Kansas statute imposing liability for the negligent act of a fellow-servant occurring there, ''but where, as here, such petition states a good cause of action under the statutory law of this State and the defendant, failing to demur, files answer and thereby invites judgment on the facts as pleaded, the presumption arises that the law of such sister State is similar to our own and the petition, thus aided by answer will be deemed good especially after verdict. [Lee v. Railway, 195 Mo. l. c. 415.]'' This holding was in conflict with the case of Ham v. Railroad, 149 Mo. App. 200, where it was held that a plaintiff could not recover on similar facts and pleadings without himself pleading and proving a statute of Arkansas, where the injury complained of there occurred, giving a cause of action for negligence of a fellow-servant, although there was such a statute in this State. On the Madden case reaching this court because of such conflict, this court in an opinion by BOND, J., reversed the Court of Appeals and held that plaintiff could not recover without pleading and proving a Kansas statute creating a cause of action for the negligent act of a fellow-servant. In this result a majority of the judges concurred, though not with the portion of the opinion upholding the rule that, in the absence of any proof to the contrary, and no demurrer being filed, the courts will presume the statutory law of Kansas the same as the statutory law of Missouri. In the concurring opinion by WOODSON, J., he said:. ''I also agree to that portion of the opinion which holds that this court cannot take judicial notice of the existence of a Kansas statute, but in order to bring such a statute to the notice of the courts of this State it must be pleaded and proven just as any other fact in the case; but I do not concur in that part of the opinion

which holds that, in the absence of pleadings and proof, the courts of this State will presume that the statutory law of the former (this State) is also the statutory law of a sister state.'' It was then pointed out that the practical effect of the rule of presumption that the statutory law of another state is the same as the statutory law of this State, is no different than taking judicial knowledge of the laws of the other state. The Madden case, therefore, as decided by this court, is against the proposition that the courts of this State, even when the defendant fails to take advantage of the point by demurrer but answers and goes to trial, will presume, in the absence of any proof on the question, that the statutory law of the place of the injury is the same as in this State. The Lee case so holds on a question of general law, but not so on a question of statutory law.

From what we have said it will be seen that the question presented is not merely plaintiff's capacity to sue or one of procedure, but involves plaintiff's pleading and proving that she has any cause of action.

We have read plaintiff's able brief with care, but we find no case holding that in an action purely statutory and dependent on a statute for its creation, and it is shown by the petition and proof that the cause of action arose and accrued in another state, the courts of this State will presume that the statutory law of the other state is the same as in this State; or that a failure to demur to the petition disclosing such defect waives the objection so completely that defendant cannot take advantage of the point in any other manner as by objecting to the introduction of evidence at its beginning or by demurrer to the evidence at its close. [See 17 C. J. 1277.]

We do not think this case calls for the court's exercise of the rule of presumption as to what is the law of Iowa on the question of liability for negligence resulting in death. The plaintiff asserts liability and must prove it. When she alleged and proved that the negligence and death occurred in Iowa, that necessitated proof that the law there existent gives damages for such negligence. A failure to prove this, like the failure to prove any essential fact, defeats the action. The same would be true as to any affirmative defense which defendant might interpose arising by reason of and dependent on the laws of the state where the cause of action accrued, which must likewise be pleaded and proved. If it is not, then such defense fails.

If, however, it is necessary to determine by the rule of presumption that the statutory law of Iowa is the same as in this State, or determine whether the common law is in force there from a historical standpoint, then the same result will be reached. While the general rule is that we presume, without proof, that the common law is in force in our sister states (State v. Clay, 100 Mo. 572, 579), an exception has been made as to those states whose territory has never

been under common law jurisdiction. While we do not take judicial notice of the statutes of these states, we do take judicial knowledge of important historical events, the acts of Congress and laws enacted by the sovereign authority over our own territory. Thus we know that Iowa, as well as Missouri, was part of the Louisiana Purchase from France and thus was subject to French law, rather than the common law of England, before and at the time of such purchase. But we also take judicial knowledge that after such territory became part of the United States, the Territory of Missouri was formed by successive acts of Congress, including what is now both Missouri and Iowa, and that the common law was put in force. Also the territorial legislature of the Missouri Territory, by act of January, 1816, put in force in all this territory the common law of England. Later, when Missouri was admitted as a state of the United States, the Territory of Iowa was detached and made a part of the Territory of Wisconsin, which, in turn, was part of the Northwest Territory formed in 1787 by Act of Congress and made subject to the common law. Thus the Territory of Iowa received a double portion of the common law, by way of Missouri and by way of Wisconsin; so that unquestionably Iowa was common law territory at and before its admission as a state. For more detailed information on this point see Davis v. McColl, 179 Mo. App. 198; Coy v. Railroad, 186 Mo. App. 408, and Clark v. Allaman (Kan.), 70 L. R. A. 971. From this standpoint, therefore, the presumption is that the common law is in force in Iowa, and, under the common law, plaintiff cannot recover.

It seems to the writer, however, that the presumption that the common law prevails in our sister states, such as Iowa, west as well as east of the Mississippi River, arises from the character and nationality of the settlers of such territory rather than from any specific legislative act of Congress or any territorial legislature enacted when such territory was practically uninhabited except by Indian tribes. We know, historically, that the original thirteen colonies adopted the common law of England because the dominant inhabitants of those colonies came from England and brought with them and transplanted here the common law of England. "And the fourth year of the reign of King James I. was the year fixed for the transplanting of the common law into America, because that was the period at which the first territorial government was established in America and with it the common law of England as it then existed." [Davis v. McColl, 179 Mo. App. 198, 206.]

In Clark v. Clark, 18 Ind. 156, 158, it is said: "We know, judicially that the common law was brought from England to this country by our ancestors and was declared for the government of the Territory of the Northwest . . . to be a part of the fundamental law of that territory."

In the same way we know that Kentucky and Tennessee are common law states because settled by immigrants from Virginia and the Carolinas, and who carried with them the institutions and laws which their forefathers in turn had brought from England. All of the states formed from the Northwest Territory are common law states, not so much from any act of Congress putting the common law in force while such territory had a negligible white population, as from the fact that the people who settled there and formed stable government brought with them from New England, New York, and Pennsylvania the same laws and customs which their ancestors brought from England. So we know, historically, that the early French inhabitants of the territory covered by the Louisiana Purchase had and could have had little effect on the laws and institutions of that territory, except possibly the State of Louisiana. The dominant settlers of that region were just as much English and imbued with the principles of the common law as the settlers of Kentucky, Tennessee, Illinois and Wisconsin. Missouri had the strongest French background of any state, other than Louisiana, formed from the Louisiana Purchase, and we take judicial knowledge that its early territorial legislature put in force, by legislative act, the common law when that territory embraced what is now Arkansas, Kansas and Iowa, as well as Missouri, though such act could have had little effect in establishing the law which would ultimately prevail in such unsettled territory. The system of law which prevailed there was that which was brought there by the people who established government and law in such territory, and those people came from and brought with them and transplanted in their new home the common law in the same way that such law was brought to and was established in the Atlantic colonies and later the states of the Mississippi valley.

We know, historically, that it was the English-speaking settlers of Texas that wrested its independence from Mexico and that the constitution of that independent republic provided for the adoption of the common law.

We are only concerned with the laws of Iowa in the present action and, as to that state, every reason exists why we should assume and act on the theory that the common law is in force there, and if the same has been changed by statute, that fact must be proven.

The result is that this case will be reversed, and, following the rule adopted in Montague v. Railroad, 289 Mo. 288; Madden v. Railroad, 192 S. W. 455; Tiffany on Death by Wrongful Act (2 Ed.) sec. 202; and 17 C. J. 1299, the same will be remanded. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.