John ZWEEMER and Beverly Arlene Blauvelt, Respondents,

v.

Jerry Lee CANTRELL and Donetta K. Cantrell, husband and wife, Lowell E. Yates and Carin L. Yates, husband and wife, Theodore E. Hill and Evelyn A. Hill, husband and wife, and Bruce L. Bewley and Geneva Bewley, husband and wife, Appellants.

Nos. 17212, 17224.

Missouri Court of Appeals, Southern District, Division One.

Jan. 30, 1992.

Richard D. Bender, Sherwood, Honecker & Bender, Springfield, for appellants Jerry Lee Cantrell, Donetta K. Cantrell, Bruce L. Bewley and Geneva Bewley.

Jim McNabb, Marshfield, for appellants Lowell E. Yates, Carin L. Yates, Theodore E. Hill and Evelyn A. Hill.

Donald G. Cheever, Marshfield, for respondents.

CROW, Judge.

The subject of these appeals [1] is land in the northeast quarter of the northeast quarter of section 25 (for brevity, we omit the township and range) in Webster County. The trial court held Plaintiffs John Zweemer and Beverly Arlene Blauvelt own:

> All that part of the NE ¼ of the NE ¼ of Section 25 ... lying East of the location of an old North–South fence and being the East 725 feet, more or less, of the NE ¼ of the NE ¼ of Section 25....

The amended decree awarded Plaintiffs possession "of the approximate 57 feet on the West side of the above described property being the property located between the old fence and the new fence constructed by part of Defendants on or about November 1, 1980." The decree also awarded Plaintiffs money damages in various amounts from various defendants for "wrongful taking."

---

1. Appellants Bruce L. Bewley and Geneva Bewley bring appeal 17224; the other six appellants bring appeal 17212. We consolidated the appeals.

Defendants—eight in number—appeal,[2] claiming the evidence was insufficient to support the decree.

Plaintiffs' record title emanates from a warranty deed executed October 27, 1972, wherein William Fred Letterman and Mildred Wilma Letterman conveyed to Plaintiff John Zweemer and his wife, Cornelia, this tract:

> All that part of the E½ of the NE¼ NE¼ of Sec. 25 ... lying North of the Diggins and Gentry Public Road, 18½ acres, more or less.

Cornelia Zweemer died in 1987. A few weeks later, John conveyed the above-described tract to himself and his daughter, Plaintiff Beverly Arlene Blauvelt, as joint tenants with right of survivorship. They acquired no additional land by deed prior to this suit.

■ We judicially know a section of land must contain, as nearly as may be, 640 acres, and is a square enclosed by parallel lines running from east to west and from south to north at a distance of one mile from each other. 43 U.S.C.A. § 751 (West 1986); *Rositzky v. Rositzky*, 329 Mo. 662, 46 S.W.2d 591, 599[19] (1931); *Cf. Hartvedt v. Harpst*, 173 S.W.2d 65, 69–70[14] (Mo. 1943); John S. Grimes, *Law of Surveying and Boundaries* §§ 92–95 (Bobbs–Merrill, 4th ed. 1976); Wilkie Cunnyngham, *Making Land Surveys and Preparing Descriptions to Meet Legal Requirements*, 19 Mo.L.Rev. 234, 236 (1954).

■ We likewise judicially know a quarter of a quarter of a section of standard size contains 40 acres, and is a square enclosed by parallel lines running from east to west and from south to north at a distance of one-fourth mile (1,320 feet) from each other. 19 Mo.L.Rev. at 236. It is thus apparent the east half of a quarter of a quarter of a section of standard size contains 20 acres and is a rectangle with an east-west dimension of 660 feet and a north-south dimension of 1,320 feet.

■ Inasmuch as (a) the trial court decreed Plaintiffs own the east 725 feet of the northeast quarter of the northeast quarter of section 25, and (b) Plaintiffs hold record title to only the east half of the northeast quarter of the northeast quarter of section 25 (being the east 660 feet of that "quarter-quarter section"), it is obvious Plaintiffs' ownership of the west 65 feet of the decreed 725 feet must rest on adverse possession.

The defendants' respective interests originate in a warranty deed executed September 10, 1974, wherein Benn Logan conveyed to Defendants Theodore E. Hill and Evelyn A. Hill certain land including:

> ... the W½ of the NE¼ of the NE¼ of Section 25 ... except a 60–foot strip along the West side for road purposes.

It is evident the east boundary of the above-described tract is the same line as the west boundary of the tract to which Plaintiffs hold record title, i.e., the line between the east and west halves of the northeast quarter of the northeast quarter of section 25.

The Hills held record title to the tract they acquired from Logan for 13 years. Beginning in 1987, the other defendants acquired their interests from the Hills. By then, the events on which Plaintiffs base their claim of adverse possession had occurred. To keep the facts in chronological order, we synopsize the evidence regarding adverse possession before recounting how the remaining defendants acquired their interests.

■ Our narrative of the evidence honors the rule that in determining the sufficiency of the evidence to support the decree in a judge-tried case, an appellate court accepts as true the evidence and inferences from it favorable to the decree and disregards contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989). Where, as here, no party requested findings of fact and conclusions of law, and the trial court made none, all fact issues shall be considered as having been found in

**2.** Lawyer Richard D. Bender filed an appellants brief for Defendants Jerry Lee Cantrell, Donetta K. Cantrell, Bruce L. Bewley and Geneva Bewley. Lawyer Jim McNabb filed an appellants' brief for Defendants Lowell E. Yates, Carin L. Yates, Theodore E. Hill and Evelyn A. Hill.

accordance with the result reached. Rule 73.01(a)(2), Missouri Rules of Civil Procedure (1991); *T.B.G.*, 772 S.W.2d at 654[3]. Credibility of the witnesses and the weight to be given their testimony were matters for the trial court, which was free to believe none, part, or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988). We do not substitute our judgment for that of the trial court on credibility issues. *State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 65[5] (Mo.App. 1987); *Stratton v. Stratton*, 694 S.W.2d 510, 512[2] (Mo.App.1985).

Viewed in harmony with the above principles, the evidence established that in 1968, Jacob G. Schwartz became owner of land immediately west of the tract to which Plaintiffs hold record title. At that time, a wire fence separated the two tracts. The fence was "fairly straight" and extended all the way "from the north end of the property to the road." Schwartz accepted the fence as the boundary. It remained in place during Schwartz's ownership. We henceforth refer to the fence as "the old fence."

When John and Cornelia Zweemer received their deed in 1972, the old fence ran the length of their west side, "[a] quarter of a mile." John believed the west boundary of his land was "[r]ight where the fence was." He pastured livestock "up to that fence," and "fixed it up" by replacing some posts and wire. He left its location unchanged.

In October or November, 1980, Defendant Theodore E. Hill and his son-in-law, Francis McCallum, tore down the old fence and had a new one erected east of it. The new fence extended "the full length" of the west side of Plaintiffs' property, "[f]rom the road clear to the back."

Evidence regarding the distance between the location of the old fence and the new one was in conflict. The testimony most favorable to Plaintiffs came from Plaintiff Beverly Arlene Blauvelt. Asked whether she had an opinion about the distance, she answered, "I'll say 57 feet."

By warranty deed executed September 14, 1987, the Defendants Hill conveyed to Defendants Bruce L. Bewley and Geneva Bewley an irregularly shaped parcel from the tract the Hills had acquired in 1974. The description of the parcel began at the southeast corner of the west half of the northeast quarter of the northeast quarter of section 25 on the north line of a county road and proceeded north 786.3 feet, then turned southwest and ultimately returned to the county road, where it proceeded east to the point of beginning. By this conveyance, the Bewleys acquired record title to a parcel with an east boundary of 786.3 feet, said boundary being the same line as the southernmost part of the west boundary of the tract to which Plaintiffs hold record title.

Defendant Bruce Bewley testified he knew nothing about the old fence.

By warranty deed executed August 19, 1988, the Defendants Hill conveyed to Defendants Lowell E. Yates and Carin L. Yates the east half of the west half of the northeast quarter of the northeast quarter of section 25, except the parcel previously sold to the Bewleys. By this conveyance, the Yateses acquired record title to a parcel abutting the west boundary of the tract to which Plaintiffs hold record title, immediately north of the Bewley property.

Defendant Lowell Yates, like Defendant Bruce Bewley, had no firsthand knowledge of the old fence.

By warranty deed executed September 6, 1988, the Defendants Bewley conveyed their property to Defendants Jerry Lee Cantrell and Donetta K. Cantrell.

Plaintiffs' petition (filed September 26, 1989) sought a decree quieting title in them to the tract described at the end of the first paragraph of this opinion. Plaintiffs' petition averred that prior to November 1, 1980, Plaintiffs and their predecessors in title had been in adverse possession of such tract more than 31 years. Plaintiffs also prayed for money damages for the rental value of the portions occupied by the various defendants since November 1, 1980. As reported earlier, the trial court granted that relief.

By their first point relied on, Defendants Bewley and Cantrell maintain the evidence was insufficient to support a decree quieting title in Plaintiffs to the east 725 feet of the northeast quarter of the northeast quarter of section 25, in that (a) Plaintiffs hold record title to only the east half (east 660 feet) of that quarter-quarter section, and (b) Plaintiffs failed to show they acquired title to any land west of their described tract by adverse possession.

Defendants Hill and Yates assert Plaintiffs failed to show they own the land extending to the old fence. Defendants Hill and Yates point out John and Cornelia Zweemer received their deed October 27, 1972, and the amended decree declared the new fence was erected on or about November 1, 1980. Consequently, say Defendants Hill and Yates, the evidence failed to demonstrate 10 years' adverse possession by Plaintiffs of the strip between the old fence and the new fence.

We begin our discussion of these contentions by noting there was no evidence establishing where the old fence was situated. If (a) it lay more than 660 feet west of the east line of section 25, and (b) Plaintiffs and their predecessors in title occupied all the land east of the fence for a period sufficient to acquire ownership by adverse possession, the evidence would support a decree quieting title in Plaintiffs to all land in the northeast quarter of the northeast quarter of section 25 east of the old fence.

However, the record supplies no clue as to how far west of the east line of section 25 the old fence lay. Because half a quarter-quarter section of standard size contains 20 acres, and the deed from the Lettermans to the Zweemers calls for only 18½ acres, it is arguable that if the old fence accurately marked the west line of Plaintiffs' described tract, the old fence was no farther than 660 feet west of the east line of section 25 (if that). We are mindful, of course, that the deed conveyed only the land north of a road. This may account for the acre and a half shortage.

Be that as it may, the record is barren of any evidence supporting a finding that the old fence lay 725 feet west of the east line of section 25. The record is likewise void of any evidence showing how far west of the east line of section 25 the new fence lies. The best Plaintiffs did was to show the old fence lay approximately 57 feet west of the new fence. That is no help absent evidence establishing the location of one of those fences with respect to the east line of section 25.

This evidentiary insufficiency makes it impossible to determine how far west of the east line of section 25 the Zweemers' occupancy originally extended. They may have occupied more than the tract described in their 1972 deed from the Lettermans, they may have occupied less, or they may have occupied precisely what the deed described. Because the record does not reveal the distance between the east line of section 25 and the location of either the old fence or the new one, there is no evidence to support the trial court's holding that Plaintiffs own the east 725 feet of the northeast quarter of the northeast quarter of section 25.

Indeed, if one assumes the new fence is located on the correct line dividing the east and west halves of the northeast quarter of the northeast quarter of section 25, the evidence fails to support a decree quieting title in Plaintiffs to the east 725 feet of that quarter-quarter section. As we have seen, the evidence most favorable to Plaintiffs was that the old fence was located 57 feet west of the new one. This 57 feet, added to the 660-foot east-west dimension of the east half of a quarter-quarter section of standard size, produces a total of only 717 feet, eight feet fewer than the 725 feet awarded Plaintiffs by the amended decree. Only if one assumes the new fence is eight feet west of the true boundary between the east and west halves of the quarter-quarter section would the evidence arguably support the amended decree. There is no evidence warranting such an assumption.

■ A party claiming title to real estate by adverse possession must establish, among other things, the precise location and boundaries of the property claimed. *Hughes v. Israel*, 73 Mo. 538, 548[4] (1881); *City of Gainesville v. Gilliland*, 718

S.W.2d 553, 562[1] (Mo.App.1986); *Ortmeyer v. Bruemmer,* 680 S.W.2d 384, 393[19] (Mo.App.1984); *Carender v. Barry,* 623 S.W.2d 73, 75[3] (Mo.App.1981). Absent such proof, any decree would be void because it would rest entirely on speculation and conjecture. *Gilliland,* 718 S.W.2d at 562; *Teson v. Vasquez,* 561 S.W.2d 119, 127[27] (Mo.App.1977).

■ Because the evidence failed to show Plaintiffs and their predecessors in title occupied the east 725 feet of the northeast quarter of the northeast quarter of section 25 (or any portion of the west half of that quarter-quarter section), there was no evidence to support a decree quieting title in Plaintiffs to any land other than that to which they hold record title. Consequently, the portion of the amended decree quieting title in Plaintiffs to the east 725 feet of the northeast quarter of the northeast quarter of section 25 must be reversed. This necessarily requires reversal of the portion of the amended decree awarding Plaintiffs money damages from the various defendants for "wrongful taking."

■ These holdings do not complete our task. In an action to quiet title, the court is required to adjudicate the respective interests of the parties to the suit regardless of which party is entitled to it. *Pitts v. Pitts,* 388 S.W.2d 337, 339[1] (Mo.1965). Such declaration should be entered although the plaintiff fails to establish his claim of title. *Id.* at 337[2].

However, in the circumstances here, it would be premature to quiet title to the disputed strip in any party. It may be possible for Plaintiffs to prove the distance between the east line of section 25 and the location of the old fence by a survey[3] or other evidence, and it may be possible for them to prove adverse possession of the land east of the old fence by them and their predecessors in title for a sufficient time to establish ownership by that means.[4]

■ A decree in a quiet title suit should not be reversed for failure of proof without remanding unless the record indicates the available essential evidence has been fully presented and the party claiming title could not prevail in any event. *Feinstein v. McGuire,* 297 S.W.2d 513, 518[13] (Mo. 1957). The record here does not demonstrate it is impossible for Plaintiffs to prevail.

The amended decree is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

PREWITT, P.J., concurs.

PARRISH, J., concurs and files concurring opinion.

PARRISH, Judge, concurring.

I concur. I do so by separate opinion due to an uncertainty as to the basis for this dispute. I am uncertain about the reason plaintiffs described the land that was conveyed to them in 1972 by William Fred Letterman and Mildred Wilma Letterman, viz., "[a]ll that part of the E ½ of the NE ¼ NE ¼ of Sec. 25 ...," as part of the tract to which they sought to quiet title. Plaintiffs indisputably own the land they acquired from the Lettermans. If they claim that the westerly boundary of that tract was the "old North–South fence," quiet title may not be the appropriate remedy. Under those circumstances, the dispute would simply be one over the location of a boundary line between plaintiffs' property on the east and property owned by the various defendants on the west.

In *Carroz v. Kaminiski,* 467 S.W.2d 871, 872 (Mo. banc 1971), the court explained that when the issue in a case "is the location *on the ground* of the boundary between the two tracts," the dispute is not a title controversy that may be resolved by an action to quiet title. Rather, "ejectment is the appropriate remedy for the determination of a boundary line." *See also Moss*

---

**3.** On the foundation required for a survey to have probative force, see *Cantrell v. Bank of Poplar Bluff,* 702 S.W.2d 935, 938[1] (Mo.App. 1985).

**4.** Defendants maintain the evidence failed to show adverse possession by Plaintiffs and their predecessors for ten years before the old fence was destroyed. We need not address that contention in these appeals.

*v. Moss,* 706 S.W.2d 884, 887–88 (Mo.App. 1986); and *Probst v. Probst,* 595 S.W.2d 289, 290–91 (Mo.App.1979). If this dispute is simply a boundary line dispute it would be appropriate, on remand, for plaintiffs to seek to amend their pleadings so as to state a cause of action in ejectment. *Moss, supra,* at 888.

On the other hand, if plaintiffs claim that they otherwise acquired title to a strip of land between the westerly boundary of the land conveyed to them by the Lettermans and the "old North–South fence," plaintiffs might consider amending their quiet title count to describe only the strip of land to which title is in dispute.